## H. CLAY BASCOM *vs.* J. HEBER SMITH.

Suffolk.    January 15, 1895. — June 21, 1895.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Law and Fact — Construction of Written Instrument as against Writer — Guaranty — Notice of Acceptance — Contract.*

After the judge has construed a written contract with reference to facts assumed to exist when it was made, his leaving to the jury the determination of such facts is not a submission to them of the construction of the contract.

The rule of construing a writing most strongly against the party who wrote and proffered it, when it is reasonably capable of two constructions, and has been honestly understood and acted upon by the other party according to the construction which is most against the interest of the party proffering it, has been adopted by the court in certain cases of real ambiguity, but it was doubted whether there was need of invoking the rule in the present case.

A guaranty of "my willingness and intention to become responsible for the work of the new pattern, size No. 7, of the Duplex Stove Company, to the amount of $500, in the event of any such action on my part becoming necessary for any cause," means that if for any cause the company should be unable to pay for the new pattern, and it should become necessary for the guarantor to pay for it, he would do so to the extent of $500. Knowledge of the acceptance of a guaranty is equivalent to notice.

In an action upon a guaranty of the cost of a set of patterns to be made for a corporation, the defendant contended that he was not bound by the guaranty because he understood that the contract between the plaintiff and the corporation was to be for a set of patterns of wood and another set of iron, whereas the order actually given by the agent of the company, and executed by the plaintiff, was for a set of wooden patterns only. The defendant was a shareholder in the company, was familiar with its affairs, and had seen the correspondence between the plaintiff and the company, wherein, although nothing was said as to whether the patterns were to be of wood or of iron, the cost of wooden patterns only was estimated. The defendant also knew that the cost of iron patterns would largely exceed the amount which he had guaranteed. On this point the judge instructed the jury : " There is another matter to which I ought to refer, and that is the claim of the defendant that there was no guaranty of this contract, because he did not understand that the contract between the company and the plaintiff was a contract to make wooden patterns alone, but that he understood that the contract was to make a complete set of patterns, wood and iron both; and that, inasmuch as he understood it that way, that was the contract, and not the contract to make a set of wooden patterns alone, and he agreed to guarantee a contract which, it appears upon the plaintiff's own showing now, was not the contract which he understood he was guaranteeing, that therefore he is not bound. The claim is not correct. If a man undertakes to guarantee a contract which he may know the terms of upon inquiry, and he makes no effort to find out what the terms are, but guarantees it, and says, 'I will guarantee that contract,' and nobody misleads him about it, and he has an opportunity to know what it is if he sees fit, but does not take pains to find out, but guarantees it without knowing, he is bound. Now, whether that applies in this case you will determine upon the evidence." *Held*, that the instructions were correct.

CONTRACT on a guaranty. Trial in the Superior Court, before *Dunbar*, J., who allowed a bill of exceptions, in substance as follows.

In 1890 certain persons undertook the reorganization and capitalization of the Economo Duplex Stove Company, a corporation formed for the purpose of manufacturing stoves and ranges, with a view to manufacturing a more satisfactory range than the company had theretofore produced.

In pursuance of this plan the treasurer of the company, A. J. Webb, on August 8, 1890, wrote to the plaintiff, who was a manufacturer of stove patterns in Troy, New York, enclosing specifications for a new range, and asking for an estimate of the cost of patterns. In this letter he said : " We have some money on hand that would enable us to go part way, at least, with a set of patterns, and I think we can get support that will enable us to complete them." To this letter the plaintiff replied, on August 4, estimating the cost of wooden patterns of the proposed new range at from six to eight hundred dollars, and suggesting a personal interview.

In September of that year there was an informal meeting of the officers and stockholders of the company, at which the defendant was present, and the plans of reorganization and the preparation of new patterns were then considered.

The treasurer of the company testified that at this meeting a proposition was made by some one present to be one of several to advance a sum sufficient to order a complete set of wooden and iron patterns, and the president of the company, Walter H. Homans, testified that the defendant said he had a friend who intended to buy a thousand dollars' worth of stock, and that he, the defendant, would pledge himself $500 on this set of patterns if necessary; that after the informal meeting the defendant withdrew, and a meeting of the directors was held, at which, in reliance upon the defendant's guaranty of a sum to pay for the patterns, it was voted to send Webb to Troy to order them.

On the day following the meeting, the vote of the directors was brought to the attention of the defendant by Homans, who then, or later, obtained from him, out of the proceeds of the sale of certain shares of stock of the company held by him in trust, a sum of money to defray the expenses of Webb's journey to Troy, the purpose of which was understood by the defendant. On cross-examination, Homans testified that he did not understand that the order was to include wood and iron patterns; that nothing was said about wooden patterns, but it was understood simply that Webb was to go to Troy and order patterns, which, it was supposed by the witness, would be a complete set.

Thereafter Webb went to Troy, and ordered of the plaintiff a set of wooden patterns in case the cost did not exceed $500, and at the same time represented that the defendant, who was financially reliable, was to be the responsible party, and he suggested that the plaintiff write to the defendant to obtain a corroboration of his representations. The plaintiff, therefore, on October 7, 1890, wrote to the defendant:

" In minuting the preliminary details for a new set of range patterns for the Duplex Range Co., Mr. Webb mentions your willingness to, in some way, become responsible for work to the amount of $500, and suggests that you will doubtless drop me a note to that effect. Our transactions with Mr. Webb have so indorsed his unchallenged integrity that I regard this letter as

superfluous, but I write in harmony with his suggestion, and we hope to get up a real marketable construction."

On October 8, the defendant replied:

" Your esteemed favor of the 7th inst. just received. I feel sure that your confidence in Mr. Webb is well placed, but I hereby signify my willingness and intention to become responsible for the work of the new pattern, size No. 7, of the Duplex Stove Company to the amount of $500, in the event of any such action on my part becoming necessary for any cause. I suppose Mr. Webb has informed you of the approaching dissolution of the old company, under competent legal management, selected at my suggestion, and the prospect of a reorganization with a new charter and a working capital of $25,000 ; and this to be accomplished in the next few weeks, in season, I have no doubt, for the prompt settlement of your bill in full. The affairs of the company are in experienced and able hands, and with thoroughly enlisted interest, through the assurance of a handsome block of the stock of the new company.

" You give me hope of the ' real marketable construction ' ; this is essentially necessary to the success of the enterprise. Any failure or deficiency in this matter will block the wheels of the new company effectually. For a good working stove of wellnigh perfect mechanical construction and adaptation to average drafts of city houses confronts us at this juncture of our affairs, either as a ' will-o'-the-wisp ' which cannot be attained, or as a solid fact. Even I myself am shaken in my faith in the enterprise, through the outrageous faults of construction of the range in my own kitchen, size No. 9, sold me by the Economo Duplex Stove Company last spring. Its fire pot is inadequate to heat the oven, even burning soft coal, without adding a fire of wood in the wood fire pot, so I am told by my cook, and its construction is such that it has warped the stove in such a manner that in three months more, at the present rate, I shall be obliged to have it taken out of my kitchen, and the range of any other company substituted, to the scandal of our friends. The present direct draft carries the heat right up the chimney, which should circulate around the stove. I do not pretend to be in the least an adept in this matter, and write you in the most friendly spirit, believing in your ability and interest in the success of our com-

pany, with the hope that you will labor earnestly (with Mr. Webb) in the correction of the mistakes in range No. 9.

" I have abiding faith in the underlying principles aimed at by the patents of this company, but I wish to see a stove in Boston that I shall not be ashamed to show my wealthy patients and friends, as I am getting to be ashamed of the one in my own kitchen. I presume, without doubt, that the principal trouble with my own stove, as with the five or six last made by you, lies in the fire pot. It is a radical fault, destructive, if continued, to the hopes of the company.

" I presume Mr. Webb is more thoroughly aware of this fault than myself, but I feel too deeply in this matter to remain silent, if any words of mine can help the company.

" It is strange that the range in Lexington, at Mr. Homans's house, should work so satisfactorily, as I know it does, and all the others of size No. 9 prove such total failures. The difference must lie in the adaptation of the fire pot, I suppose, for it seems to me it cannot be wholly a question of draft. My draft here, on the Back Bay, is fully as strong as his is."

The plaintiff testified that Webb ordered a set of wooden patterns; and stated to him that the sole condition upon which the order was given was that the defendant had guaranteed the expense to the amount of $500, and that the execution of the order was left contingent upon the defendant's confirmation of his statement; that the witness wrote to the defendant at Webb's suggestion, and relied on the defendant's assurance contained in his letter of October 8.

There was evidence that the plaintiff made a set of wooden patterns as ordered by Webb, in accordance with the specifications, at a cost of $500, for which he had not received payment.

About October 15, 1890, Webb sent to the defendant the specifications for the patterns, and, later, a letter of the plaintiff to him dated October 11, in which the plaintiff said: " Unless more work than we can foresee is required, we shall be able to produce the wood patterns, cast the iron patterns, file, joint, wax, and followboard complete for less than $900."

Webb further testified, for the plaintiff, that after his return from Troy he called on the defendant, with whom he talked over the whole matter, and that thereafter he kept him in-

formed of what was going on ; that about October 8 the defend-
ant asked him whether the plaintiff had sent his bill, and if
he had not the defendant requested the witness to ascertain
when he would send it, which the witness did ; that at one of
his interviews with the defendant the latter made a statement
signifying that he expected to pay the bill when it came ; not
in terms, but in a remark to the effect that he would settle the
bill if he had to sell a dog, or something of that sort.

There was evidence tending to show that, while the proposed
reorganization was under consideration, and until after demand
made for payment of the bill on February 17, 1891, Homans
was in almost daily communication with the defendant, and
both Webb and Homans testified that they had never heard any
suggestions from him that he expected anything other than a
set of wooden patterns to be made.

The defendant testified that, at the informal meeting, in
response to a request of the president of the company for a
statement of his views, he said that he was certain of having
$500 paid to him by a friend for new stock of the company as
soon as it was reorganized, but that he made no guaranty
of any accounts to be opened by the company for new range
or patterns, or any other statement in regard to guaranteeing as
a basis for the action of the company, except the expression of
his hope of selling the new stock ; that although he was a share-
holder, he was not an officer of the company ; that in 1890 he
was authorized by the company to attempt its capitalization,
and to sell stock on commission ; that the proceeds of one of
such sales were, at the request of Homans, held by the witness
in trust for the uses of the company, out of which from time to
time he paid to Homans certain sums, including the $25 used
by Webb for his expenses to Troy.

On October 28, 1890, the defendant wrote to Homans :

" I am feeling much more hopeful of our success ultimately.
Mr. Chase called on me, and we had a pleasant chat for two hours
last Friday. I guaranteed his stock, and should Mr. Bascom
demand payment in advance of our reorganization and replenish-
ment of the treasury by the raising of the $25,000, I shall now
meet him as promptly as possible. I hope, however, that we
shall be ready for his entire bill in January, thereby saving me

any loss through the guarantee of Mr. Chase's stock. I am hopeful that Mr. Chase will release me from this obligation of personal guarantee as soon as we are reorganized and the money put into the treasury, as promised by Mr. Houghton."

The defendant, in explanation of this letter, testified that he had arranged to sell to one Chase five hundred dollars' worth of stock in the company, with the agreement that he, the defendant would see that Chase suffered no loss thereby, and would make good the five hundred dollars' worth of stock unless Chase received it in some other way, and that the previous suggestions made by him with regard to furnishing money to the company for the purpose of getting patterns were based on this sale of stock to Chase, from which only he expected to get the money. On cross-examination he testified that his holding out the prospect of his being able to pay $500 was based upon his certainty of deriving that amount from Mr. Chase for the sale of the new stock under the reorganization; that he was promising this as treasurer; that he already held $290; that he was not actually treasurer of the company, but a trustee, and expecting, upon the reorganization, to become treasurer.

On February 14, 1891, Webb wrote to the plaintiff:

"From what I have heard indirectly from Dr. Smith I feel convinced that he will argue the matter of your bill. I am also satisfied that he will have nothing important to say to us here. I think he will write to you, and very likely has already.

"In view of what I now understand about the matter, I shall authorize you to state that there is no money in the treasury of the Economo Duplex Stove Company with which to settle your bill, and that the bill falls under the terms of Dr. Smith's agreement, wherein he assumed responsibility for the bill to the amount of five hundred dollars in case of emergency. I shall also advise you to the effect that, if you fail to hear from Dr. Smith at once, or if he discloses a disposition to delay the matter or evade the payment, you proceed immediately to demand the settlement of the account by him in accordance with the terms of his agreement, and then, if you fail to elicit a satisfactory response, that you proceed to collect the bill by law.

"I regret that I did not know of his disposition earlier. He had referred to the matter in conversation with me, and

stated explicitly that he should settle the bill. He does not now say that he will not pay it, but does speculate as to whether he must do so. This implication is my ground for the statements of this letter. Dr. Smith is financially good for the bill, and I do not believe he would ever allow himself to be sued for it. I believe that decided yet friendly demand for the settlement would be sufficient. The matter now evidently lies between you and Dr. Smith, and I do not know that I can help the matter along in any way. I have no recommendations to offer other than prompt and decided action upon your part."

On February 16, Homans wrote to the plaintiff :

" I think I owe you a few lines explaining the present state of affairs of the Economo Duplex Stove Company, especially as you have written Mr. Webb that you need a remittance from us for that part of the work on our new range which you have now done. I am carrying the whole enterprise this winter practically alone, and at a great disadvantage on account of having no stove to exhibit. Dr. Smith's stove is broken down through its imperfect fire pot. We have renewed it several times, but the plates have been badly warped and the stove is not fit to show. I cannot get people out to Lexington to see my own, which is in good order, because it is so far from Boston.

" Dr. Smith tells me that he has been unable to do anything for us whatever in the way of influence, on account of our not having the new range completed and sent to Boston for exhibition, as he expected was to be done. Stock which he had already conditionally sold could not be delivered on this account, as it was subscribed for conditionally upon the reorganization of the old company, and the possession of a complete working range such as we hope you have now under way.

" I am sorry that, through Mr. Webb's caution in ordering you to go no further than the completion of the wooden patterns, our money affairs have become so embarrassed again ; for we were placing stock with every prospect of getting out of the hole we were in when Mr. Webb took this position regarding the new range. It practically trigged our wheels. Mr. Webb is a very cautious and thoroughly honorable man, and meant right. I suppose he thought we should before this have sold some of our stock, and ordered the completion of the new range.

" I have not cared to ask you such a favor without a remittance, and have been doing my best to dispose of an interest in our company in order to start things up. I am negotiating with several parties who have followed me about the past two months, but who offer me too low a figure; perhaps I have been asking too high. We shall come to an understanding, I trust, and as soon as we do you will have the remittance of the amount owed you by our company.

" You have dealt with us enough to know that we are honest, and also capable of paying our debts. If you will only have patience, everything will be all right.

" I hope you will not present your bill to Dr. Smith under all the circumstances, for we have been unable as a company to keep our pledges with him, having failed to reorganize as agreed, on account of our embarrassing situation with the old range and the completion of the new one blocked ; neither have we been able to put ourselves in a position to deliver him the block of stock promised him, or to elect him treasurer of the company, as he expected. He is interested and friendly, believing in our range still, notwithstanding his hard experience with the one sold him ; and if we can only get a new range under his eye, he will feel that he can conscientiously recommend our stock to his wealthy friends. As it is, he cannot in honor dispose of any of the stock, he says.

" Your correspondence had better be with me, as I am really the working and active representative of the company. I hope this letter will offer you a clear view of the situation of our affairs. I am far from being discouraged, but I am very tired of waiting so long for our affairs to turn towards success, which I believe is just ahead."

The defendant testified that the last letter, purporting to be signed by Homans and addressed to the plaintiff, was dictated by Homans at the defendant's house and in his presence, and that he was consulted with regard to said letter, and made suggestions, and there was evidence tending to show that the letter was afterwards written out·by the defendant's stenographer and sent to Homans to be signed, but Homans denied having signed the letter, and the plaintiff denied having received it.

There was evidence tending to show that the defendant had

in his possession the stock certificate book and all the funds belonging to the corporation, the funds being the proceeds from sales of stock; that the defendant knew the resources of the corporation, and knew that it had no funds except such as might come from the expected sales of stock, and must have known that a complete range, or a set of both wood and iron patterns, would cost more than $500.

On February 17, 1891, payment was demanded of the defendant by letter.

The defendant contended that the contract between the plaintiff and the corporation, being a contract for wooden patterns alone, was not such a contract as was contemplated or intended either by the company or by himself; that it was not the contract which he understood was to be made, and was a contract so materially at variance with what the parties intended as not fairly to come within the terms of the guaranty, and that therefore he could not be bound.

At the close of the testimony the defendant requested the judge to rule that the evidence was insufficient to warrant a verdict for the plaintiff; but the judge declined so to rule, and the defendant excepted.

The defendant then requested the judge to rule: " 1. That the letter of the defendant to the plaintiff, October 8, was not an absolute guaranty, but merely an offer of guaranty on certain conditions therein stated. 2. That acceptance was necessary within a reasonable time to bind the defendant on such guaranty before it could become operative as a subsisting contract between the defendant and the plaintiff. 3. That making the patterns was not an acceptance without notice to the defendant that such action was taken relying on said proposed guaranty, and such notice must be plain and explicit, and brought to the knowledge of the defendant. 4. That a delay of five months before notice to the defendant of any intention to hold him liable was unreasonable, and such notice after such a lapse of time was not sufficient to bind the defendant on the overture of guaranty in October. 5. That inasmuch as this was, upon the contention of the plaintiff, a promise to pay the debt of another, it comes within the statute of frauds, and the agreement, if any, must be in writing, and therefore oral expressions of a desire or intention to

settle the controversy without suit would not be sufficient to
bind the defendant to pay the debt of the company.   6. That if
the jury find that there was an offer of guaranty to the company,
or a contract with the company, such guaranty or contract would
not warrant a verdict for the plaintiff in this case, for, in order
to recover, the plaintiff must prove a contract between himself
and the defendant.   7. That the letters show not an absolute
guaranty, but an offer of guaranty, which, to bind the defendant,
should have been accepted within a reasonable time; and as there
is no evidence of acceptance until the letter of February 17, call-
ing for payment, there is no evidence of an acceptance within a
reasonable time, and no evidence of any guaranty on which the
defendant became bound to the plaintiff."

The judge declined so to rule, and the defendant excepted.

The judge instructed the jury in substance as follows.

The question in this case is, What is the contract?   But pre-
cedent to that is the inquiry, What was the contract between the
plaintiff and the Economo Duplex Stove Company, which, it is
agreed, is the party originally responsible for the work done by
the plaintiff?   The plaintiff's theory of the case is, that in Sep-
tember or October, 1890, the Stove Company not having been suc-
cessful in selling its ranges or in obtaining sufficient capital to
carry on its business, an informal meeting of its stockholders
was held to consider the prospects of the company, and to take
measures to make the business a success; that the defendant was
present at that meeting, and consulted with Homans, the presi-
dent of the company, with reference to raising capital for the
purpose, in the first place, of procuring a set of patterns for a
new range, which it was hoped would be satisfactory, and a
merchantable and effective article in the market.   There was
evidence that some one present at the meeting offered to be one
of six to raise two hundred dollars apiece for the purpose of
procuring a set of patterns, but that the offer was not accepted
by any of the others; that subsequently the defendant said to
Homans that he would be willing to be responsible to the extent
of $500 for the purpose of getting a set of patterns made, such as
they wanted, and that shortly thereafter the directors of the com-
pany voted to accept the proposition, and to authorize Webb to
go to Troy to consult with the plaintiff and to contract with him

for a set of patterns; that after the meeting Homans went to the defendant and obtained from him the sum of $25 to pay the expenses of Webb in going to Troy, stating to the defendant why the money was wanted, and for what purpose it was to be used; that the money came from the proceeds of certain shares of the stock, said by Homans to have been owned by him and sold with his consent, which the defendant held in trust for the purposes of the company. After that Webb went to Troy and had an interview with the plaintiff, in which they discussed the details of the patterns, and Webb said to the plaintiff that he had come to order a set of patterns for other parties; that he was unwilling, as an officer of the company, to take the responsibility of ordering them, because there was no money in the treasury of the company to pay for them, but that Dr. Smith, who was financially responsible, had agreed to become responsible for the getting up of the patterns to the extent of $500; and he suggested that it would be well for the plaintiff, before the work was begun, to obtain a confirmation from Dr. Smith of his statement, whereupon the plaintiff wrote to Dr. Smith: "In minuting the preliminary details for a new set of range patterns for the Duplex Range Co., Mr. Webb mentions your willingness to, in some way, become responsible for work to the amount of $500, and suggests that you will doubtless drop me a note to that effect. Our transactions with Mr. Webb have so indorsed his unchallenged integrity that I regard this letter as superfluous, but I write in harmony with his suggestion, and we hope to get up a real marketable construction." In reply, the defendant, on October 8, 1890, wrote a letter of which the following is the portion which relates directly to the contention of the plaintiff that the two letters considered together constitute a contract of guaranty: "Your esteemed favor of the 7th inst. just received. I feel sure that your confidence in Mr. Webb is well placed, but I hereby signify my willingness and intention to become responsible for the work of the new pattern, size No. 7, of the Duplex Stove Company, to the amount of $500, in the event of any such action on my part becoming necessary for any cause." Thereafter the plaintiff completed a set of wooden patterns in accordance with the terms of the contract made with Webb, the specifications of which, the plaintiff contended, contemplated the manufacture of

wooden patterns only, and not iron.  Thereafter, on October 28, 1890, the defendant wrote to Homans a letter, a portion of which is as follows: " I am feeling much more hopeful of our success ultimately.  Mr. Chase called on me, and we had a pleasant chat for two hours last Friday.  I guaranteed his stock, and should Mr. Bascom demand payment in advance of our reorganization and replenishment of the treasury by the raising of the $25,000, I shall now meet him as promptly as possible.  I hope, however, that we shall be ready for his entire bill in January, thereby saving me any loss through the guaranty of Mr. Chase's stock.  I am hopeful that Mr. Chase will release me from this obligation of personal guaranty as soon as we are reorganized and the money put into the treasury, as promised by Mr. Houghton."

There is evidence that, on February 16, 1891, a letter was written which, the defendant says, was dictated in his presence by Homans, to the composition of which he gave certain suggestions, and the contents of which he knew, which was taken subsequently to Homans to be signed, and which, as stated by Stiles, was signed by Homans, and that the letter addressed to Bascom at Troy was mailed.  Part of it is as follows: " I hope you will not present your bill to Dr. Smith under all the circumstances, for we have been unable as a company to keep our pledges with him, having failed to reorganize as agreed, on account of our embarrassing situation with the old range and the completion of the new one blocked ; neither have we been able to put ourselves in a position to deliver him the block of stock promised him, or to elect him treasurer of the company, as he expected."  On February 17, 1891, the plaintiff demanded payment of his bill, according to the terms of the guaranty, to which no reply was made. In determining what this contract is, some light is thrown upon it by the parties themselves, and by their relations to the enterprise. The plaintiff is a manufacturer of patterns, and the defendant is a physician, who, interested as a stockholder in the company and desirous of its success, was present at the negotiations for a reorganization and capitalization.  He had in mind the sale of stock to other persons interested in the company, and as a preliminary to such sale it was desirable that there should be a set of patterns or a complete range in order that the practical success of the enterprise might be demonstrated.  These, and other circumstances to which attention has been called, are to be con-

sidered in determining what the contract was. It is not disputed that the contract between the plaintiff and the company was for a set of wooden patterns, and if that was so, what was the contract between the plaintiff and the defendant? In other words, is it established that there was a guaranty of the expenses to be incurred in making these patterns? That is the exact question.

It is claimed on the part of the plaintiff that this was an absolute contract of guaranty; that upon its face it is as though it were written in this way: "If you will make a set of patterns for the Economo Duplex Stove Company, I will be responsible for the expense of making them to the amount of $500. If they do not pay, I will." Or: " I will guarantee the payment of the bill." The defendant says that that is not so; that this is a conditional contract; that it is nothing more than an offer that, upon the happening of a certain contingency, he will be bound to pay it. Upon the face of the papers themselves there is this contingency about it, and only this : that he will be responsible for that bill to the amount of $500, in the event of any such action on his part becoming necessary. If we had nothing but the papers themselves to construe, it might be doubtful what they meant. But when the evidence in the case showing the relations of the parties toward each other, their action with reference to the original contract, and their knowledge of the circumstances and the facts, and the manner in which the parties themselves subsequently treated the contract is taken in connection with the papers themselves, then the contract, if the facts are such as the evidence, to which reference has been made, tends to establish, means this: " I will be responsible for the payment of the expense of making a set of patterns to the amount of $500, provided the company becomes unable for any reason, or is unable for any reason, to pay the amount." That is what it means in the light of those facts. It might be, as contended by the defendant, and it would be the law, that if there were a contingency involved in that letter, or one that could be inferred from it in the light of the circumstances upon a fair construction of it, the happening of which the defendant would not know, he would be entitled to notice of it before he would be bound. But in the light of these facts, if they are established, no possible contingeny could arise except the non-payment of the

bill by the company, and that was known to the defendant, who knew the condition of the company and expected to be its treasurer. No notice therefore of facts not within his knowledge, or of the acceptance of the guaranty, in view of these facts, if established, was necessary. So that the sum and substance of the agreement of the defendant is this: " I will pay this bill to the amount of $500, the expense of getting out this set of patterns, provided the company does not pay it." The defendant contends that he did not understand that he was making a guaranty by writing this letter, which was an absolute guaranty, but supposed he was making an offer of guaranty. A paper like that is to be construed most strongly against the man who writes it. If it is capable of two constructions, the court will adopt the one which is most favorable to the other party, because the man who writes the language is bound by it to any fair construction, any honest and reasonable construction, that can be put upon it, even although there is another that is more favorable to him.

There is another matter to which I ought to refer, and that is the contention of the defendant that there was no guaranty of this contract, because he did not understand that the contract between the company and the plaintiff was a contract to make wooden patterns alone, but that he understood that the contract was to make a complete set of patterns, wood and iron both; and that inasmuch as he understood it that way, that was the contract, and not the contract to make a set of wooden patterns alone; and he agreed to guarantee a contract which, it appears upon the plaintiff's own showing now, was not the contract which he understood he was guaranteeing, and that therefore he is not bound. The contention is not correct. If a man undertakes to guarantee a contract which he may know the terms of upon inquiry, and he makes no effort to find out what the terms are, but guarantees it, says, " I will guarantee that contract," and nobody misleads him about it, and he has an opportunity to know what it is if he sees fit, but does not take pains to find out, but guarantees it without knowing, he is bound. Now, whether that applies in this case will be determined upon the evidence.

No question was made in this case that there was not seasonable demand made for the payment of the bill, provided the guaranty is a guaranty by which the defendant is bound.

It is not contended that the defendant is bound to pay this

debt because of admissions that he made subsequently. Those were put in for the purpose of showing the situation of the parties, their relations to each other, their knowledge of the circumstances, and their subsequent action in interpreting the contract which it is contended was made.

The plaintiff must prove between himself and the defendant a contract of guaranty. An offer of guaranty would not be sufficient.

At the conclusion of the charge and before the jury retired, the defendant saved exceptions to the charge as to the following points. 1. As to the part of the charge wherein the letters of October 7 and 8 are construed as an absolute guaranty, and that no notice of acceptance was necessary. 2. As to the instructions that said letters are to be construed most strongly against the defendant. 3. As to that part of the charge instructing the jury as to the defendant's contention that the contract made at Troy for wooden patterns alone was so materially at variance with what the parties intended as not to come fairly within the terms of the alleged guaranty.

The jury returned a verdict for the plaintiff ; and the defendant alleged exceptions.

*W. O. Kyle*, for the defendant.

*H. E. Warner*, for the plaintiff.

FIELD, C. J. The court undertook to construe the contract declared on with reference to all the circumstances which the evidence tended to establish as existing when it was made, and merely left it to the jury to determine whether the circumstances assumed had been established by the evidence. This is not leaving the whole construction of a written contract to the jury; and the jury, by their verdict, have found that the circumstances were as they were assumed to be, and have construed the contract in the same manner as the court.

The principle of construing a writing most strongly against the party who wrote it, and proffered it, when it is reasonably capable of two constructions, and has been honestly understood and acted upon by the other party according to the construction which is most against the interest of the party proffering it, was announced in the charge of the presiding justice, not as an instruction to the jury, but as the rule adopted by the court. It is a rule which has been adopted in certain cases

of real ambiguity, although we have some doubt whether, on the circumstances shown, there was any need of invoking it in the present case. *Barney* v. *Newcomb*, 9 Cush. 46.

Assuming that the defendant knew that Webb, in behalf of the Economo Duplex Stove Company, had requested the plaintiff to make a new set of range patterns, of which there is no doubt, the letters of October 7 and October 8, 1890, become intelligible enough. The plaintiff in his letter to the defendant of October 7, 1890, indicates that he wishes to have a note in writing from the defendant confirming what Webb had said, namely, that the defendant would become responsible to the plaintiff for work on the new set of patterns ordered of the plaintiff to the amount of $500, although the plaintiff politely says that he has such confidence in Webb's integrity that he regards a letter from the defendant as superfluous. The defendant, in his letter in reply, signifies in writing his present willingness and intention to become responsible to the plaintiff for work on such new set of patterns to the amount of $500. The whole letter of the defendant shows that he expected that the plaintiff would go on and make a new set of patterns as ordered by Webb, and the evidence shows that he knew that the plaintiff did go on and make the patterns. There was evidence that the defendant understood that the plaintiff in doing so was relying upon his agreement to become responsible to the amount of $500, and the jury must have so found. Upon such a finding no special notice of the acceptance of the guaranty or of the offer of guaranty was necessary. Knowledge was equivalent to notice. *Bishop* v. *Eaton*, 161 Mass. 496.

In view of the facts which the court assumed in its hypothetical construction of the contract, which facts the jury must have found, the construction which the court gave to the clause, " in the event of any such action on my part becoming necessary for any cause," seems to be the only reasonable one. It meant that if, for any cause, the company should be unable to pay for the new patterns, and it becomes necessary for the defendant to pay, he would pay for them up to the amount of $500.

The defendant contends that he is not bound, because it is said that he understood that the contract between the plaintiff and the company was, or was to be, for a set of patterns of wood

and another set of iron, whereas the order actually given by Webb was for a set of wooden patterns, and the plaintiff made only a set of wooden patterns, in conformity to the order.

Upon this point the instructions of the court were as follows: "There is another matter to which I ought to refer, and that is the claim of the defendant that there was no guaranty of this contract, because he did not understand that the contract between the company and. the plaintiff was a contract to make wooden patterns alone, but that he understood that the contract was to make a complete set of patterns, wood and iron both; and that, inasmuch as he understood it that way, that was the contract, and not the contract to make a set of wooden patterns alone; and he agreed *to* guarantee *a* contract which, it appears upon the plaintiff's own showing now, was not the contract which he understood he was guaranteeing, that therefore he is not bound. The claim is not correct. If a man undertakes to guarantee a contract which he may know the terms of upon inquiry, and he makes no effort to find out what the terms are, but guarantees it, says, 'I will guarantee that contract,' and nobody misleads him about it, and he has an opportunity to know what it is if he sees fit, but does not take pains to find out, but guarantees it without knowing, he is bound. Now, whether that applies in this case you will determine upon the evidence."

We think that the instructions were correct. The meaning of the letters, construed with reference to the circumstances which the jury must have found, is that the defendant is to become responsible to the amount of $500 for the work done by the plaintiff upon the new set of patterns, size No. 7, of the Economo Duplex Stove Company, which Webb, acting in behalf of the company, had ordered the plaintiff to make. There is nothing in the letters indicating whether the new patterns were to be of wood or of iron, or whether there were to be two sets of patterns, one of wood and the other of iron, and the defendant guarantees payment to the amount of $500 for the work to be done by the plaintiff on the patterns, size No. 7, of the Economo Duplex Stove Company which Webb had ordered. As Webb ordered only wooden patterns to be made, the defendant guaranteed payment for the patterns so ordered to the amount of $500.

                                        *Exceptions overruled.*