CHARLES H. SLACK

*v.*

KATE KNOX.

*Opinion filed December 22, 1904.*

1. CONTRACTS—*the interpretation parties have put upon contract may be looked to by the courts.* In construing a contract it is permissible for the court to look to the interpretation which the parties have put upon it by their conduct.

2. LEASES—*when right to an additional service does not pass by implication.* If, after the execution of the lease, the lessor agrees to render an additional service not mentioned in the lease for an additional consideration, the execution of a second lease without mentioning the additional service, the agreement for which is still being performed by both parties, does not pass the right to such service to the lessee by implication, as an incident to the lease. (*Thomas* v. *Wiggers,* 41 Ill. 470, distinguished.)

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

This was a bill for an injunction filed on August 31, 1903, in the superior court of Cook county, by Kate Knox, the appellee, against Charles H. Slack, the appellant, to restrain the latter from interfering with a certain steam pipe which transmitted steam from a boiler owned by appellant to certain tables and a hot water tank owned by the appellee. A temporary injunction was issued in accordance with the prayer of the bill. The defendant appeared and filed a general and special demurrer, which was overruled by the court, and defendant standing by the demurrer, a decree was entered making the injunction permanent. Slack appealed to the Appellate Court for the First District, where the decree was affirmed, and has prosecuted a further appeal to this court.

The facts relied upon by appellee to support the decree and as set forth in her bill are substantially as follows:

On October 30, 1899, appellant leased to appellee the second floor of a six-story building in the city of Chicago for a term commencing November 10, 1899, and ending April 10, 1902, at a monthly rental of $500. The lease provided that the premises were to be used for a woman's club room, and for no other purpose, and also provided that the lessor should furnish steam heat, without charge, from September 1 to April 30 during the term of the lease. Appellee entered into possession of the premises and arranged and furnished part thereof as parlors and reading rooms and the remainder as a restaurant, with a kitchen connected therewith. There were installed in said kitchen a range and also certain steam-heated tables, by means whereof the food could be kept warm after being cooked, and a tank or boiler for heating water for use in washing dishes and cooking utensils, cleansing rooms and for other purposes. Slack, the lessor of the premises, maintained in the basement of the building a steam heating plant, consisting of an engine and boiler and steam pipes conveying steam to the different portions of the building for heating and other purposes. Appellee, with the knowledge and acquiescence of appellant, and under the direction and supervision of the engineer in charge of appellant's steam boiler, caused a steam pipe to be connected with the boiler and to be extended to and connected with the steam tables for the purpose of heating them, and also to the water tank for the purpose of heating water therein. Slack requested appellee, in consideration of the steam so furnished by him, to clean and keep clean certain hallways and stairs at her own expense, which she agreed to do, and which she did do up to the time the bill was filed herein.

On July 25, 1901, another lease, containing practically the same terms and conditions as the first one, was executed and entered into between the same parties and for the same premises, for a term commencing April 10, 1902, and ending April 30, 1907. The connection with appellant's boiler

was still maintained, and appellee continued to keep the hallways and stairs clean. On August 5, 1903, appellee received a letter from appellant, stating that the excessive use of water and steam by her and the increased cost of coal and labor, made it impossible for him to continue to furnish her with steam for her kitchen in exchange for the service rendered him in keeping the hallways and stairs clean, and that if she desired him to furnish steam for the tank and tables after August 31, it would cost her $50 per month in addition to said service. The complainant was using the same amount of water and steam as she had been using theretofore during her tenancy, except as such use may have been increased by the growth and expansion of her business. She was then furnishing meals to about 2400 persons daily.

The appellant threatened to shut off the supply of steam carried through the pipe in question after August 31, and appellee filed the bill for an injunction, alleging that if the steam was shut off for a single day, it would cause her great annoyance and loss and serious damage to her business, and that if the steam was not furnished as aforesaid, she could continue to carry on her business and make use of the premises for the purposes designated in the lease only by the erection of a steam plant upon the premises occupied by her, which could not be done without great expense, and that she would also thereby be deprived of the use of a portion of the premises for her business on account of the loss of the space which such plant would occupy.

Appellant here contends that the bill does not state a cause of action, (1) because the lease gives to appellee no right to steam for the purposes for which she is using it, and the lease cannot be modified or changed by proof of a subsequent parol agreement or understanding giving that right; and (2) because the permission given to appellee to use steam for the tank and tables was a mere license, revocable at any time by appellant, and such license was revoked by the letter of August 5, 1903.

MUSGRAVE, VROMAN & LEE, for appellant.

F. P. SIMONS, and PLINY B. SMITH, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Appellee urges that she has the right to have the demised premises, with all their appurtenances and beneficial rights, maintained, throughout the term of the lease, in the same condition they were in during the former occupancy and at the time of the execution of the new lease, and contends that the right to have the steam pipe connect the steam boiler in the basement of the building with the hot water tank and steam tables on the premises leased by her, and to have steam supplied through that pipe, passed to her, by implication, as an appurtenance or easement under the second lease, for the reason that, in view of the facts stated in the bill, it is apparent that it was the intention of the parties to the lease, at the time of the execution of the second lease, that the appellee was to have the steam pipe and connections continued in the same condition and situation in which they then were, during the term of that lease.

At the time of the execution of the first lease, the pipe was not in position and no connection existed between the water tank and steam tables owned by the appellee and the boiler in the basement of the building. The tank and the tables were placed on the premises after the execution of the first lease, and the connection with the boiler was made at the instance of the appellee under an oral contract, separate and distinct from the lease, as we think.

Appellee urges that this is not a correct view of the matter, and that the pipe was installed and the connections made by appellant's leave without any consideration therefor passing to him and without any new contract, and that it is therefore to be regarded as though done in the first instance under the terms of the first lease. Her contention in this regard is inconsistent with the following language found in the bill,

213—13

to-wit: "That while said lease provided that the defendant should supply the complainant with steam heat from the first day of September to the thirtieth day of April in each year, said lease contained no provision specifically relating to said connection between said steam boiler and complainant's said apparatus and defendant thereupon requested complainant in consideration of said connection with said steam boiler to clean and keep clean the hallways and stairs from the second floor of said building to the front doorway or public entrance thereto at her own expense, which said complainant consented to and thereafter did." It is apparent that the right to the use of this connection with the boiler and to the steam thereby conveyed did not pass by implication under the first lease, for the reason that at the time that lease was executed, the pipe was not in position nor were the tank and tables, in connection with which it was afterwards used, on the premises at all, so that there was nothing in the condition of the property, which was the subject of the contract, to indicate that it was the intention of the parties that appellee was to have the use of the pipe and steam thereby conveyed under the terms of that lease; and construing the language quoted above from the bill, as it must be construed, most strongly against the pleader, we think it shows that the connection between the boiler and the tank and steam tables was made pursuant to a contract by which appellant was to permit that connection and furnish steam, and appellee was to clean the hallways and stairs from the second floor of the building to the entrance thereof.

It is elementary that this oral contract did not alter or vary the terms of the original lease, which was under seal and made prior to the time the oral agreement was made. (*Baltimore and Ohio and Chicago Railroad Co.* v. *Illinois Central Railroad Co.* 137 Ill. 9, and cases there cited.) Consequently, at the time of the execution of the second lease, the appellee was enjoying the use of the pipe and the steam thereby conveyed, not under the terms of the original lease

nor as an appurtenance or easement connected with the property granted, but under the oral agreement made subsequent to the lease last mentioned, and inasmuch as the second lease is also silent as to this pipe and the steam by it supplied, we do not think it can be said that the use of that pipe and the steam necessary for the steam tables and tank passed to appellee by implication or on the theory that it was the intention of the parties that such use should be included in the lease, as an appurtenance or easement.

After the beginning of the term covered by the second lease and down to the time that this difficulty arose between the parties hereto, appellee continued, at her own expense, to keep the hallways and stairs clean in accordance with the terms of the oral agreement. If it was the intention of the parties that the right to the use of the pipe and the steam should pass by the second lease, how can these acts of the appellee be explained? Manifestly no duty was imposed on her by the second lease to clean the hallways and stairs. Had she failed to do that work, an action of covenant on the lease certainly could not have been brought against her to recover upon a cause of action resulting from her default in that respect. The conclusion is irresistible that she incurred that expense because she believed that she was thereby compensating appellant for the use of the pipe and the steam which it supplied; and if she was so doing, then she was accepting and receiving the steam under the oral agreement and not under the lease.

It is permissible, in construing a contract, to look to the interpretation that the parties thereto have placed thereon, in its performance, for assistance in ascertaining its true meaning. "No extrinsic aid can be more valuable." *Vermont Street M. E. Church* v. *Brose,* 104 Ill. 206; *Storey* v. *Storey,* 125 id. 608.

Appellee relies particularly upon the case of *Thomas* v. *Wiggers,* 41 Ill. 470. In that case it appeared that a tenant under an earlier lease had used the exhaust steam from an

engine which was conducted by means of a pipe from the engine to a steamer used by the tenant, and that this steam was essential to the conduct of his business. This court held that under the terms of his second lease, which provided as the first had done that he should have a certain portion of the building together with one-half of the steam power produced by the steam engine located therein, he was entitled to the use of the exhaust steam as he had previously used it and was using it at the time the second lease was made. This is put upon the ground that in the construction of grants, the courts ought to take into consideration the circumstances attendant upon the transaction, the particular situation of the parties and the state of the thing granted, for the purpose of ascertaining the intent of the parties, and that the defendant well knew when he signed the second lease that the plaintiff understood that he was acquiring the right to use the exhaust steam in the precise manner in which he was then using it under the first lease. That case is distinguished from the one at bar by the fact that here appellee was enjoying the right now in controversy under a contract separate and distinct from the first lease, and was paying for the enjoyment of that right a valuable consideration in addition to the rent reserved by the lease. Under such circumstances, it cannot be said that it was the intention of the parties that this right should be included in the new lease. In the *Thomas case,* at the time of the execution of the new lease, there was no contract except the old lease under which the right could have been enjoyed. In this case, the right was being enjoyed under a separate contract, and the presumption which arose in the *Thomas case* that the parties intended that the right should be enjoyed under the second lease, does not arise here. On the contrary, following the reasoning in that case, we arrive at the conclusion that the parties intended that the right in question should be regulated by the same contract under which it existed at the time of the execution of the second lease, viz., the oral contract.

As the oral contract fixed no term during which it should continue in force, either party thereto had a right to terminate it upon reasonable notice to the other.

The judgment of the Appellate Court and the decree of the superior court will be reversed, and the cause will be remanded to the latter court with directions to sustain the demurrer to the bill.

*Reversed and remanded, with directions.*