NEW YORK CENTRAL RAILROAD COMPANY & another *vs.* DAVID STONEMAN & another.

Suffolk.     March 7, 1919. — June 24, 1919.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Landlord and Tenant,* Construction of lease. *Contract,* Construction. *Evidence,* Extrinsic affecting writings, Of conduct of parties to contract.

A provision of a lease of several floors of a building in Boston to a railroad company to be occupied by the lessee as a freight office for a freight terminal, was "that the demised premises shall be heated by the lessors to a proper

warmth for office purposes." *Held,* that this provision related only to the degree of heat to be furnished and not to the part of the day or week during which the building was to be heated.

There was no provision in the lease, above described, as to the part of the day or week during which the demised premises should be kept heated, and it was *held,* that in that respect the lease was ambiguous, so that extrinsic evidence was admissible to show what was the intention of the parties upon that question.

If the true import and meaning of an instrument in writing cannot be determined from its language, it will be construed most strongly against the party using the uncertain language.

It appeared that the lease above described demised to the lessee the second and third and a part of the first floor and basement of a seven-story building, and that the rest of the building was occupied by stores and manufacturing establishments; that there was a custom in Boston of heating office buildings from eight o'clock in the morning to six o'clock in the evening and manufacturing establishments from seven o'clock in the morning to six o'clock in the evening unless the lease called for heat beyond those hours; that the lessor knew before the lease was executed that the lessee would use the premises as a railroad office at its freight terminal; that it was necessary for the proper operation of the railroad for the lessee to use freight trains on holidays, Sundays and at night and that for the handling of freight it also was necessary to keep a force of clerks at the freight offices day and night and on holidays and Sundays. In a suit in equity to compel the furnishing of heat to the lessee on nights and holidays and Sundays, it was *held,* that it could not be ruled as a matter of law that the lessee was not entitled to have the premises heated twenty-four hours of every day.

The suit above described was against a mortgagee of the demised premises, who had agreed to be bound by its provisions, if he foreclosed his mortgage, and who had so foreclosed. It appeared that the lease was for five years, that the original lessor continued to be the owner of the building for five months, during which he kept the building heated at all hours of every day, including Sundays and holidays; that, after the defendant became owner, his agent without objection continued so to furnish heat for nine months more, when the defendant notified the plaintiff that he would not furnish heat at night nor on Sundays or holidays. *Held,* that evidence of such conduct of the original lessor and the defendant was admissible to show the construction put upon the ambiguous provision of the lease by the parties themselves, and that their interpretation as shown by their conduct was of great importance in determining the meaning that the parties intended should be given to that provision.

In the suit above described, it also was *held* that the defendant, having agreed, as mortgagee, at the making of the lease, to be bound by its terms in case he foreclosed his mortgage before its termination, could not, after such foreclosure, place upon the lease an interpretation different from what the original parties intended and adopted as their construction of its provisions.

BILL IN EQUITY, filed in the Superior Court on October 29, 1918, by the New York Central Railroad Company, lessee of the Boston and Albany Railroad, and W. G. McAdoo, the then Director General of Railroads, seeking specific performance of the provisions

of a lease for five years made by the owners of a seven-story building numbered 57 Kneeland Street, in Boston, which the defendants, then mortgagees of the premises, assented to and agreed to be bound by in case they foreclosed their mortgage before termination of the lease. · The prayers of the bill were in substance that the defendants be required to furnish the plaintiff heat on Sundays and holidays and between the hours of six o'clock in the afternoon and seven o'clock in the morning.

The suit was heard by *J. F. Brown,* J.   He found that the "rest of the building on Kneeland Street is occupied by stores and manufacturing establishments.   It appeared that the custom in Boston is to heat office buildings from eight o'clock A. M. to six o'clock P. M., and manufacturing establishments from seven o'clock A. M. to six o'clock P. M., unless the lease calls for heat beyond those hours, but that it is customary to insert in such leases a clause that 'during reasonable and customary business hours the lessors are to furnish to the lessee steam for heating the premises in the heating season,' or similar clauses."   The judge made certain other findings of fact which are described in the opinion, ruled · that the suit could not be maintained, and at the request of the plaintiffs reported the case to this court for determination.

The case was argued at the bar in March, 1919, before *Rugg,* C. J., *De Courcy, Crosby, Pierce,* & *Carroll,* JJ., and afterwards was submitted on briefs to all the Justices.

*G. H. Fernald, Jr.,* for the plaintiffs.

*C. S. Hill,* for the defendants.

CROSBY, J.   The plaintiffs leased from the owners the second and third floors and part of the first floor and basement of a building, to be occupied as a freight office for their freight terminal in Boston.   The lease was in writing and the defendants, as mortgagees of the property, assented to it and agreed to be bound by its terms if they foreclosed the mortgage before the expiration of the lease.   The bill seeks to enforce specific performance of the lease, which provides "that the demised premises shall be heated by the lessors to a proper warmth for office purposes."   The judge of the Superior Court before whom the case was tried ruled that upon the facts recited in the report the bill could not be maintained, and reported the case to this court.

It is recited in the report that "it is necessary for the proper

operation of the railroad for it to operate freight trains on Sundays and at night;" and that "It appeared in evidence that other transportation companies in Boston, namely: the Boston and Maine Railroad, the New York, New Haven and Hartford Railroad Company and the American Railway Express Company keep their freight offices open twenty-four hours in the day, Sundays and holidays included, and properly heated, although the force of clerks on duty at night and on Sundays and holidays is smaller than on week-days and varies according to the amount of business, and that it is necessary for the handling of freight to keep a force of clerks at the freight offices continuously;" and further, that the plaintiffs entered into possession of the premises in August, 1917, and have continued in possession over since, except that since December 28, 1917, the railroad has been operated by the federal Director General of Railroads.

The lessors kept the premises heated to a proper warmth for office purposes continuously twenty-four hours in the day, including Sundays and holidays, until February 16, 1918, when the defendants made an entry on the premises for the purpose of foreclosing their mortgage, but left the building in charge of the lessors, who continued to furnish heat as previously. The defendants' agent in charge of the building in March, 1918, learned that heat was furnished night and day and continued so to furnish it until November, 1918, when the defendants notified the plaintiffs that they would not thereafter furnish heat at night or on Sundays or holidays. During the previous winter the lessors had difficulty in obtaining coal for heating the building and the plaintiffs furnished them with about twenty-five tons for that purpose. The lessors promised to pay for the coal but failed to do so; and afterwards the plaintiffs, with the consent of the defendants' agent, deducted from the rent due the defendants the cost of the coal.

The broker of the lessors, who negotiated the lease with the plaintiffs' representative, was told by the latter that the premises were to be used by the railroad as a freight office for its freight terminal in Boston, and would be occupied by a night force as well as a day force; and while the lessors were not told by their broker that the office would be open night and day, still they

knew that the premises were to be used by the railroad as a freight office for its freight terminal.

The provision in the lease "that the demised premises shall be heated by the lessors to a proper warmth for office purposes," relates only to the degree of heat to be furnished and not to the time during which heat is to be furnished.. Upon that question the lease is silent. In this respect the covenant is ambiguous and of doubtful meaning, and evidence was properly admitted to show the conditions and circumstances under which it was made in order to ascertain the true meaning of its language as it was used by the parties. If the true import and meaning of a written instrument is doubtful and the intention of the parties cannot be determined from its language, it will be construed most strongly against the person using the uncertain language. *Foternick* v. *Watson,* 184 Mass. 187. *Bascom* v. *Smith,* 164 Mass. 61. *Barney* v. *Newcomb,* 9 Cush. 46. The evidence of the custom in Boston of heating office buildings from eight o'clock in the morning until six o'clock in the evening, and manufacturing establishments from seven o'clock in the morning to six o'clock in the evening, is not decisive as to the rights of the parties. The report shows that the lessors knew before the lease was executed that the premises would be used by the plaintiffs as a railroad office at its freight terminal; it also appeared that it was necessary for the proper operation of the railroad for it to run freight trains on Sunday and at night when passenger traffic is light, and there was evidence that for the handling of freight it was also necessary to keep a force of clerks at the freight offices continuously. Upon this evidence it could not have been ruled that the plaintiffs were not entitled to have the premises heated twenty-four hours in the day, including Sundays and holidays. *Reynolds* v. *Boston Rubber Co.* 160 Mass. 240, 245. *Strong* v. *Carver Cotton Gin Co.* 197 Mass. 53. *W. T. Tilden Co.* v. *Densten Hair Co.* 216 Mass. 323.

As the language of the lease was uncertain and doubtful as to the length of time heat was to be furnished, the evidence that from the time the plaintiffs entered into possession in August, 1917, the lessors kept the premises heated continuously twenty-four hours each day until February 16, 1918 (when the defendants made an entry for the purpose of foreclosing their mortgage),

was admissible to show the interpretation which the original parties placed upon the lease. The evidence that the defendants after taking possession continued to furnish heat continuously, without objection, until November, 1918, and paid the plaintiffs for coal furnished by them so to heat the building, was also admissible to show the construction which the defendants after taking possession placed upon the provision of the lease in question. Where the terms of a written instrument are not clear and explicit, the interpretation which the parties have placed upon it is of great importance in determining its true meaning. *Stone* v. *Clark,* 1 Met. 378. *Lovejoy* v. *Lovett,* 124 Mass. 270. *Jennings* v. *Whitehead & Atherton Machine Co.* 138 Mass. 594. *Slack* v. *Knox,* 213 Ill. 190.

Aside from the conduct of the defendants as mortgagees, they, having expressly assented in writing to the lease and agreed to be bound by its terms, cannot now avoid its provisions and place upon it an interpretation different from what the original parties intended. As the meaning of the covenant was doubtful and its true construction depended upon extrinsic evidence to explain it, and thereby show the intention of the original parties, the defendants under their agreement were bound by the construction adopted by the parties. *Bascom* v. *Smith,* 164 Mass. 61, 78. While it appears that the heating plant was so arranged that heat could not be furnished to the plaintiff without heating the rest of the building, still there was nothing to show that provision could not be made to limit the heat furnished to other tenants to such times as they were entitled to it.

As in the opinion of a majority of the court it properly could not have been ruled that the bill could not be maintained, the entry must be, ruling reversed, and case to stand for further hearing. The nature of the relief to which the plaintiffs are entitled, if it turns out that they are entitled to relief, is not now before the court.

*So ordered.*