ANTONIO ALBIANI & others *vs.* UNITED ARTISTS
CORPORATION.

Suffolk.    November 4, 1929. — January 2, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Landlord and Tenant,* Construction of lease, Heat.  *Contract,* Construction.  *Evidence,* Presumptions and burden of proof, Extrinsic affecting writing.

Previous to the execution of a lease of an entire building devoted to business purposes, the lessee indicated his willingness to occupy the lower portion of the building, but stated that he did not need the upper portion and did not wish his rental expenses to exceed $2,700 a year.   Provisions therefore were inserted in the lease whereby the lessor guaranteed to find a tenant to occupy the upper portion of the building for a term equal to that of the lease at an annual rental of not less than $3,300;  and that if he did not do so, the "rent is to be reduced proportionately."   The rent stipulated in the lease was $6,000 a year.   There was no provision in the lease concerning the heating of the building.   There was but one heating apparatus in the building, which was under the control of the lessee.   The lessor procured two subtenants for the upper portion of the building, and submitted to the lessee for his execution subleases to them for a term equal to that of the lease, one sublease stipulating an annual rental of $1,800 and the other $1,500, and each providing that the lessee should furnish heat to the sublessee without compensation therefor being paid to the lessee.   The lessee refused to execute the subleases because of the provisions therein relating to heat.   In a suit in equity by the lessor against the lessee to compel the defendant to execute the subleases, there was no evidence that the subject of heat had been referred to by the parties, nor evidence of any custom with reference thereto.   A final decree was entered dismissing the bill.  *Held,* that

(1) Since the lease was of doubtful meaning, the circumstances surrounding its execution properly might be considered in ascertaining its meaning;

(2) So construing the lease, it did not appear to have been the intention of the parties that the defendant should furnish heat to the sublessees free of charge: their understanding appeared to have been that the defendant's expense would not exceed the rental of $2,700 which he was willing to pay for the lower portion of the building if he had hired only that portion;

(3) The circumstance, that the only heating apparatus of the building was under the control of the defendant, did not entitle the plain-

tiff to a ruling as a matter of law that the defendant was obliged to furnish heat to the sublessees free of charge;

(4) The plaintiff had not sustained the burden, resting upon him, of showing that there was an implied obligation on the part of the defendant to do so;

(5) The defendant was not obliged to execute the subleases, which did not conform to the provisions of the agreement contained in his lease from the plaintiff;

(6) The bill properly was dismissed.

BILL IN EQUITY, filed in the Superior Court on September 7, 1927.

Cory Lindsay and Irene Rogers, doing business as Cory Lindsay Company, and Onnig D. G. Melkon, doing business as Melkon Cinema Laboratory were admitted as parties plaintiff by order of *Bishop,* J. The suit was heard by *Cox,* J., a stenographer having been appointed under G. L. c. 214, § 24, Equity Rule 29 (1926). The pleadings and material facts found by the judge are described in the opinion. The annual rental stipulated in the lease to the defendant was $6,000. By order of the judge a final decree was entered dismissing the bill. The plaintiffs appealed.

*R. B. Owen,* for the plaintiffs.

*J. H. Morson,* for the defendant.

CROSBY, J. This is a suit in equity whereby the plaintiff seeks to compel the defendant to execute two subleases of the upper portion of a building, occupied in part by the defendant, as lessee, and owned by the plaintiff.

The plaintiff alleges in the bill that he is the owner in fee simple of certain premises in the city of Boston, which he purchased from one Fenton, and that at the time of the purchase there was in existence a lease of the premises from Fenton to the defendant. This lease was assigned to the plaintiff on September 10, 1926. It contains the following provision: "It is understood and agreed that the party of the first part guarantees that the upper portion of the building will be leased for a sum of not less than Thirty-three hundred ($3300.) Dollars per year. The term of lease for the above tenancy to run parallel with this lease, viz: ten years. A tenant shall be found to occupy the upper portion of

these premises to occupy same for the same period that the United Artists occupies the lower portion. In the event that no tenant is found the United Artists Corporation's rent is to be reduced proportionately." It is further alleged in the bill that there is an implied obligation on the part of the defendant to execute leases of the upper portion of the building to any tenants who are ready and willing to accept and enter into such leases and are financially able to carry out the terms; that the defendant instructed one O'Brien to act in its behalf in procuring such tenants, and in pursuance of those instructions O'Brien procured one Onnig D. G. Melkon, doing business as Melkon Cinema Laboratory to enter into a lease of the second floor of the building at a rental of $1,800, per annum, and as a tenant for the top floor procured Cory Lindsay and Irene Rogers, doing business as the Cory Lindsay Company, at a rental of $1,500 a year, the term of the lease of each tenant to be coincident with that of the defendant; that both of these proposed tenants executed the above mentioned leases and were accepted by a duly authorized agent of the defendant as proper parties to be lessees; that the proposed tenants, with the assent of the defendant's agent, entered into possession of the premises so respectively leased to them, and large sums of money were expended by them, and by the lessor in putting the premises into suitable condition for occupancy; that the defendant refused to execute the leases previously signed by the proposed tenants, ordered them to vacate, and now threatens to evict them in violation of the agreement contained in its lease. The bill prays that the defendant be ordered to execute the leases, and to acknowledge the lessees named therein as its tenants.

In its answer the defendant denied that O'Brien acted as its agent, and alleged that, acting as the duly authorized agent of the plaintiff or of Fenton, he had induced the Melkon company and the Cory Lindsay Company to move into the premises; that the refusal to execute the leases to the proposed tenants was justified on the ground that the lease to the Melkon company contained clauses obligating the defendant to supply heat without cost to the lessee, and to pay

for alterations shown on an attached plan, and a clause granting permission to hang a certain projection sign over the sidewalk without having first obtained the consent of the city of Boston to do so; that the rent to be paid was inadequate under the provision in the defendant's lease; that the business to be carried on by the Melkon company, by reason of its hazardous nature, would increase the cost of insurance on the building and premises occupied by the defendant. Respecting the proposed lease to Cory Lindsay Company, the defendant objected on the ground that it recited that the defendant was to furnish heat to the lessee with no provision for compensation therefor to the defendant, and that the right was reserved to the lessee to cancel the lease at the end of five years. It is admitted in the answer that the defendant is obliged to accept such a lease as will comply with the so called "guaranty" contained in its lease from Fenton.

The trial judge found that O'Brien was not the agent of the defendant and was not acting for it in procuring the subleases, but was the agent of and acted for one McDonald who was the real owner of the building when the main lease was signed, and who subsequently sold the property to this. plaintiff; that the Cory Lindsay Company moved into the building on November 22, 1926, without the knowledge or assent of the defendant, and moved out on October 8, 1927, after it had been notified by the defendant to vacate; that the company does not now desire any lease, but was able, ready and willing to pay the rent reserved of $1,500 a year if it had obtained a lease. The judge further found that the arrangements under which Melkon moved into the premises were made without the knowledge or assent of the defendant; that alterations in the premises were made and the cost was paid by Fenton or McDonald; that the defendant has not been called upon to pay for any part of it; that Melkon has signified a willingness to sign a lease corresponding in terms with the defendant's main lease at a rental of $1,800 per year; that he has placed a sign on the building which projects over the sidewalk. The judge does not find that the nature of the business is hazardous or increases the fire risk.

The plaintiff requested the trial judge to grant, among

others, the following rulings: "4. Under the terms of the lease between the plaintiff and the defendant, inasmuch as there was only one heating apparatus in the building and the same was in the exclusive possession and control of the defendant, the tenants of the second and third floors as a matter of law were entitled to have heat furnished by the defendants without any additional rent or payment therefor. 5. The leases tendered to the defendant from the Cory Lindsay Company and the Melkon Cinema Laboratory were in compliance with the provisions in the lease between the plaintiff and the defendant and the defendant was under an obligation to accept and execute the same. 6. The construction of the lease between the plaintiff and the defendant, when read in the light of all the surrounding circumstances and the condition and character of the premises, is that the tenants to be furnished heat were to pay $3,300 rent and no addition was to be charged for heat." The judge refused to grant these requests, and ordered the bill dismissed with costs. A final decree was entered dismissing the bill with costs, from which the plaintiff appealed.

Upon the question of heating there is no provision in the defendant's lease relative thereto, nor does it appear that at any time the subject was referred to. There was no evidence of any custom relating to the heating of a building of this character by the lessor. Where language in a written instrument is ambiguous and of doubtful meaning, the circumstances under which the instrument was made may be considered in order to ascertain the true meaning of its language as used by the parties. *Sargent* v. *Adams*, 3 Gray, 72. *Bascom* v. *Smith*, 164 Mass. 61. *New York Central Railroad* v. *Stoneman*, 233 Mass. 258. Upon an examination of the testimony printed in the record, it is plain that it was not the intention of the parties that the defendant should be obliged to furnish heat, without compensation, to prospective lessees of the upper portion of the building.

It is apparent from the evidence that the defendant's officers were averse to taking a lease of the entire building as the first floor and basement provided sufficient floor space for their needs. The record shows that the clause in the

lease obligating the lessor to find tenants for the two upper floors was inserted because of the insistence of the defendant's manager, who was unwilling to assume the burden of finding tenants for the portion of the building not required for its business. He stated to O'Brien that he was not in the real estate business. There was evidence that the defendant did not want its rental expenses to exceed $4,000 to $5,000 a year; for this reason the rent was fixed at the sum of $2,700 if the defendant failed to secure tenants for the upper floors. There was further evidence that the difference between $5,000 and $2,700 would represent the cost of insurance and taxes which the defendant agreed to pay. These matters were the subject of several conferences between the representatives of the defendant and O'Brien during the negotiations before the lease was signed by the defendant. The position of the owner was well known to the agent of the lessor. In view of the evidence, it is a reasonable inference that the defendant executed the lease with the mutual understanding that its total expenses would not exceed the amount it was willing to pay for the first floor had it leased only that portion of the building. In these circumstances the defendant was under no obligation to execute a sublease requiring it to furnish heat to the sublessee free of charge. An agreement to execute a lease is not broken by the refusal to sign a lease which imposes terms not provided for or contemplated in the agreement. The circumstance that there was but one heating apparatus in the building, which was in the exclusive control of the defendant, did not entitle the plaintiff to a ruling that, as matter of law, the tenants of the second and third floors were entitled to have heat furnished by the defendant without payment therefor. The burden of proof rested upon the plaintiff to show, in the absence of an express covenant in the lease requiring the defendant to furnish heat without additional charge, that there was an implied obligation on its part to do so, and that the furnishing of heat without charge was usual. *Strelley* v. *Pearson*, 15 Ch. D. 113. There was no evidence of a prevailing custom in Boston to furnish tenants in such a building with heat free of charge. It is not unusual for parties to make a

special contract for the furnishing of heat. *I. Wit Realty Co.* v. *G. F. Redmond & Co. Inc.* 251 Mass. 344, 346. The case at bar is distinguishable from cases where a dwelling house or an apartment is leased for occupancy as a home. *I. Wit Realty Co.* v. *G. F. Redmond & Co. Inc. supra.* All the cases cited by the plaintiff involve leases of premises to be used as a dwelling place. *Lloyd Construction Co.* v. *Dudgeon,* 134 N. Y. Supp. 888. *Berlinger* v. *Macdonald,* 149 App. Div. (N. Y.) 5. *O'Hanlon* v. *Grubb,* 38 App. D. C. 251. *Havens* v. *Brown,* 208 Mo. App. 473. The defendant has not refused to furnish heat, but has refused to furnish it at his own expense. As the subleases procured by the plaintiff contained provisions that heat should be furnished by the defendant, with no provision for the payment therefor, and as there was no implied obligation to furnish such heat without payment, the defendant was not required to accept the subleases. *Dougan* v. *H. J. Grell Co.* 174 Wis. 17.

The bill cannot be maintained for the reasons stated. It is unnecessary to consider the other objections raised by the defendant to the subleases.

It follows that the entry must be

*Decree affirmed with costs.*