NEW YORK CENTRAL RAILROAD COMPANY & another *vs.* DAVID STONEMAN & another.

Suffolk.   March 11, 1920. — May 21, 1920.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & JENNEY, JJ.

*Landlord and Tenant,* Construction of lease.  *Contract,* Construction.  *Agency,* Effect of agent's knowledge not communicated to principal.  *Evidence,* Extrinsic affecting writings, Judicial notice.  *Equity Pleading and Practice,* Decree, Costs.  *Director General of Railroads.*

A judge, who heard a suit in equity by a railroad corporation against a mortgagee in possession of certain real estate which the mortgagor had let to the plaintiff by a lease in writing whose provisions the mortgagee had agreed to be bound by, among others a provision relating to heat to be furnished by the lessor which was ambiguous as to whether the premises should be heated nights and on holidays and Sundays, found, upon evidence warranting the findings, that, while the character of the plaintiff's business required that the premises should be heated on all days and nights, the lessor was not informed of that fact;

that the lease was drawn by agents of the plaintiff; that to supply heat nights and on holidays and Sundays would require a large expenditure by the defendant; that the building was of a class usually not heated nights or on holidays or Sundays; that certain conduct of the lessor and of the defendant in keeping the premises comfortably heated nights and holidays and Sundays had no reference to an interpretation of the requirements of the lease in that respect, but that, when the defendant understood that the plaintiff claimed a right to such heat, he denied the right, while asserting his willingness to act so as not to embarrass the federal government, then operating the plaintiff. By order of the judge a final decree was entered dismissing the bill. Upon an appeal by the plaintiff, it was *held*, that no error appeared in the findings or rulings of the judge.

At the hearing above described, a broker, who had acted for the lessor in procuring the lease, testified that an authorized representative of the plaintiff had spoken to him "of there being employees there at night," and that he knew "that the night force was to some extent to occupy the premises;" and the attorney who acted for the plaintiff in making the lease testified that he informed the broker that it would be necessary for the plaintiff to have a night force. *Held*, that the above evidence did not as a matter of law require a finding by the judge that the broker of the lessor knew that the premises were to be used by the plaintiff days and nights without interruption.

At the hearing above described, it appeared that the defendant, after hearing of the claim of the plaintiff that it was entitled under the lease to heat days and nights without interruption, continued thus to furnish heat, and the plaintiff contended that this was a construction of the ambiguous provision of the lease by conduct which bound the defendant. The defendant offered, and, subject to an exception by the plaintiff, the judge admitted evidence of conversations between the defendant and his agent, which tended to explain such conduct of the defendant and to show that it was not a construction of the contract favorable to the plaintiff. *Held*, that the evidence properly was admitted.

Where a suit in equity, brought by a railroad corporation and by the Director General of Railroads in 1918, was dismissed by a final decree on January 26, 1920, "with costs to the defendants," this court took judicial notice of the fact that at the time of the entry of the decree the Director General of Railroads no longer was operating the railroad, and ordered that the decree be so modified as to provide that he be not required to pay costs.

BILL IN EQUITY, filed in the Superior Court on October 29, 1918, by the New York Central Railroad Company, lessee of the Boston and Albany Railroad, and W. G. McAdoo, the then Director General of Railroads, seeking specific performance of the provisions of a lease for five years made by the owners of a seven-story building numbered 57 Kneeland Street in Boston, which the defendants, then mortgagees of the premises, assented to and agreed to be bound by in case they foreclosed their mortgage before the termination of the lease. The prayers of the bill were in substance that the defendants be required to furnish heat for the

leased premises on Sundays and holidays and between the hours of six o'clock in the afternoon and seven o'clock in the morning.

The suit first was heard by *J. F. Brown*, J., who ruled that, upon certain facts found by him, the suit could not be maintained and reported the case to this court, who decided, as reported in 233 Mass. 258, that the ruling was wrong and remanded the case to the Superior Court for further hearing.

The suit was heard a second time by *Wait*, J., a commissioner having been appointed under Equity Rule 35 to take the evidence. Material evidence and findings of the judge are described in the opinion.  By order of the judge a final decree was entered on January 26, 1920, dismissing the bill "with costs to the defendants taxed at $29.48;" and the plaintiff railroad company appealed.

*C. O. Pengra*, (*R. A. Stewart* with him,) for the plaintiff railroad company.

*C. S. Hill*, for the defendants.

JENNEY, J.  This is a suit in equity in which the plaintiffs seek the specific performance of an agreement to heat the premises demised in a certain lease, claiming that the true construction of the lease requires the furnishing of heat throughout the entire term thereof without any interruption, except during such time as artificial heat is unnecessary.

This case was before the court in *New York Central Railroad* v. *Stoneman*, 233 Mass. 258, where it was decided that the present defendants were bound by the true interpretation of the lease, and that the provision therein contained, "'that the demised premises shall be heated by the lessors to a proper warmth for office purposes,' relates only to the degree of heat to be furnished and not to the time during which heat is to be furnished."  In regard to the latter question, it was held that the covenant of the lease was "ambiguous and of doubtful meaning," and that evidence was admissible of the circumstances attendant on the making of the demise, and of the practical construction placed upon the provision as to heating, in order to determine its true meaning.  This court directed the case to stand for further hearing, since it was of the opinion that the ruling that, as a matter of law, the bill could not be maintained, was erroneous.

After full hearing, a commissioner having been appointed to take the evidence, the case is now before us solely on the plain-

tiffs' appeal from a decree dismissing the bill. The trial judge also made findings of facts which are conclusive, unless unsupported by evidence and plainly erroneous. *Donnelly* v. *Alden,* 229 Mass. 109.

1. The judge found that the lease was prepared by the agents of the plaintiff corporation; that the lessors "had no knowledge of the methods and hours of use contemplated by the lessee, other than that they knew the premises were to be used as a freight office for its freight terminal at Boston, and that some of the clerks would work at night." They were not told, however, by their broker, with whom all the negotiations were had, that "the office would require heat day and night." There was "no evidence anything was said of Sundays and holidays, or in regard to work all night." The defendants knew only that the purpose of the lessee to use the premises for a freight office required a temperature of about seventy degrees. During the term of the lease, other transportation companies in Boston kept their freight offices, which were on the railroad property, open "twenty-four hours in the day, Sundays and holidays included, and properly heated," although the force employed varied. It was necessary to run freight trains on Sundays and holidays, and to keep clerks at work continuously in freight offices, it being, however, possible to avoid this, but neither usual nor reasonable so to do; the lessee was authorized to run trains on Sundays, and in order to do this clerks must work on that day. To modify the heating system of the building in which the leased premises are situated, so as to enable the landlord to supply heat on nights, Sundays and holidays to the plaintiffs only, would involve a large expenditure; and the building in question is of the class usually heated from seven o'clock in the morning to six o'clock in the afternoon on ordinary working days of the year. There is usually inserted in leases of buildings containing manufacturing establishments, where heat is to be supplied by the lessors, a clause in regard to the "reasonable and customary business hours" within which heat is to be furnished, or some clause to that effect.

2. The evidence relating to the construction of the lease by the parties was susceptible of more than one conclusion. The plaintiffs contend that the acts of the lessors in furnishing heat was a practical construction in accordance with the plaintiffs'

contention, while the defendants claim that they did not so operate because of the following facts found by the judge. The heating plant was designed for the use of anthracite coal. Where such coal is used, fires may be banked in the late afternoon, and yet during the night give sufficient heat to maintain a comfortable temperature except in extreme weather. Until late in December, 1917, when the coal famine became acute, the heating plant was run in this way without the use of any extra coal or help at night. The lessors were driven by the coal famine to use bituminous coal. Where this coal is used, it is not possible to maintain heat with the fires banked, and it is economical to attend to the fires in the night, rather than to permit them to go out; furthermore, because the use of bituminous coal caused trouble with the heating plant, it was necessary to run fires night and day to prevent injury to the heating system. This change made necessary the employment of a night man, and fires were run both day and night from late December, 1917, until the end of the cold weather in the spring of 1918. While complaint was made in the winter of 1917–18 as to sufficiency of heat, it related to days as well as nights, although during the winter the lessee made known to the lessors for the first time that it claimed the right to have the premises heated continuously. This claim was denied, the lessors promising, however, to do all in their power to accommodate the lessee with heat at all times; and this they did. The lessors ordered their agent to furnish heat throughout "what was left of the heating season so as not to embarrass the government at that time, but to notify the lessees that such heat would not be furnished with the next season." In the fall of 1918, the defendants notified the lessee that they would not furnish heat at night, or on Sundays or holidays.

From these findings of facts, the judge found that the conduct of the lessors under the circumstances showed that what they had done as to furnishing heat had no reference to the interpretation of the lease; that the lessors never until December, 1917, considered furnishing heat throughout twenty-four hours in the day, Sundays and holidays included; that they did not know the lessee so construed the lease until "at the earliest, late December of 1917;" and that they did not by their conduct assent to, or make, the claimed interpretation.

The plaintiffs do not complain of any of these findings, except such as relate to the legal effect of the specific facts found, and those as to the knowledge of the lessors of the contemplated use of the premises, basing their objection to the latter on the testimony of Diehl, who was the broker for the lessors, that the authorized representative of the plaintiff railroad company did "speak [to him] of there being employees there at night," and that he knew "that the [a] night force was to some extent to occupy the premises." The attorney who acted for the railroad corporation in making the lease testified that he informed Diehl it would be necessary to have a night force. Assuming that the knowledge of the broker was imputable to the lessors, the evidence did not require a finding that he knew that the special purpose for which the railroad corporation intended to use the premises required heat at all hours of the day and night. The judge was not bound to accept the testimony of the attorney as true, or even that of the broker concerning the more limited use of the premises. The judge did find that the lessors knew that some of the clerks would work at night. We cannot revise nor enlarge these findings. The evidence did not require a finding that the broker knew that the use of the premises contemplated was without any interruption. The record shows no primary request to make any express finding of the knowledge of the broker, nor any additional findings relating thereto. See *Robinson* v. *Brown*, 182 Mass. 266; *Rubenstein* v. *Lottow*, 220 Mass. 156, 164.

The findings, the resultant order of the judge for the dismissal of the bill, and the decree entered in accordance therewith, were warranted by the evidence. The facts as determined did not compel any ruling of law that the plaintiffs were entitled to relief, either by specific performance or by the retention of the bill for assessment of damages.

The plaintiffs contend that their exception to the admission in evidence of conversations between the defendants and their agent Susser, to explain the conduct of the defendants in continuing to furnish heat at night after learning of the plaintiffs' claim in March, 1918, must be sustained, because Susser never communicated his instructions to the lessee. The evidence was properly admitted to show the reason why the defendants continued to furnish heat, and to explain their conduct in so doing.

It neither enlarged nor diminished the rights of the plaintiffs, but simply tended to explain the conduct of the defendants on which the plaintiffs base their claim of the construction of the ambiguous term. The exception must be overruled. See St. 1913, c. 716, § 4; *Noyes* v. *Gagnon,* 225 Mass. 580.

The decree of the Superior Court must be affirmed, except that it should be so modified as to provide that the plaintiff McAdoo is not to be required to pay costs. The court must take cognizance of the fact that the New York Central Railroad is no longer operated by the Director General of Railroads, and that the primary responsibility is upon the plaintiff corporation. So modified, the decree must be affirmed.

*Ordered accordingly.*