A & S PRODUCTS CORPORATION *vs.* MINNIE PARKER (and two companion cases between the same parties).

Suffolk. April 2, 3, 1956. — May 11, 1956.

Present: QUA, C.J., WILKINS, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Landlord and Tenant*, Heat. *Damages*, For breach of contract. *Pleading, Civil*, Specifications. *Practice, Civil*, Variance.

Evidence of lack of heat in a leased portion of a business building, of inadequacy and improper installation of the heating facilities therein, and of eventual substantial changes in the facilities, following which the heat was adequate, warranted a finding that during certain periods of the term of the lease the lessor failed "to use due diligence in furnishing heat for the [leased] premises" in accordance with a covenant by him in the lease to do so. [191–192]

Under specifications by a lessee of a portion of a business building in an action against the lessor for breach of a covenant by the lessor in the lease to use due diligence in furnishing heat to the leased premises, that the damage suffered by the lessee was "Loss of man hours of work by employees. Discomfort of lessee and employees, and ina-

bility to perform usual duties. Electricity consumed to operate heating blowers," the lessee was not entitled to recover the difference between the value of the leasehold with the covenant unbroken and its value with the covenant broken. [192]

THREE ACTIONS OF CONTRACT. Writs in the Municipal Court of the Roxbury District dated December 11, 1953, February 15, 1954, and August 30, 1954, respectively.

The actions were heard by *Gourdin,* J.

*Samuel Shostak,* for the defendant.

*Leo Gordon,* for the plaintiff.

WILLIAMS, J. These are three actions of contract by the lessee under a lease executed on or about May 11, 1953, in each of which it is sought to recover damages for breach of a covenant in the lease reading: "The lessor agrees to use due diligence in furnishing heat for the premises hereby demised during the usual business hours during the heating season, but the lessor shall not be responsible for any interruption in the supply of heat, or for any claims arising as a result thereof." The cases, which were tried together, are alike as to pleadings except as to the allegations of time, the periods during which the breaches occurred being averred respectively to have been from October 15, 1953, to December 11, 1953; from December 11, 1953, to February 15, 1954; and from February 15, 1954, to August 30, 1954. In each declaration it was alleged that by the defendant's failure to use due diligence in furnishing heat the plaintiff "incurred considerable expense and suffered great damage in business and profits, and was deprived of the enjoyment of . . . [the] premises." In response to the defendant's motion in each case to specify "all items of damage which the plaintiff claims to have suffered" the plaintiff specified "Loss of man hours of work by employees. Discomfort of lessee and employees, and inability to perform usual duties. Electricity consumed to operate heating blowers."

The lease was for a term of two years beginning June 1, 1953, of the first and second floors of an unheated building at 38 Plympton Street, Boston, to be used in the sale and distribution at wholesale of hardware, kitchen and house-

hold wares, and similar products. There was evidence that the defendant owned an adjacent industrial building equipped with a central heating system "fired" by oil and during the summer of 1953 connected this system with the leased premises. She installed a blower type unit heater on each floor and in December added two additional blowers, leaving the plaintiff to make the necessary electrical connections between the blowers and its meter. It also purchased two "controls." There were frequent complaints of insufficient heat. Its employees "could not perform their usual functions . . . [and] on one morning in December, 1953, there was a skim of ice over the water in the toilet bowl." It was required because of cold to purchase a "space" heater for each floor. In November, 1954, the defendant took down the piping and blowers, reinstalled and relocated all heaters, replaced the piping, and added three heaters. Since then the heat has been adequate. According to expert testimony based on a survey made on or about May 31, 1954, the "four unit heaters were inadequate to heat the premises even if properly installed, but they were not properly installed." Expert witnesses for the plaintiff testified subject to the defendant's objections and claims for a report of the evidence "that the fair yearly rental value of the premises heated was $3,434, and . . . unheated . . . was $2,382," and "that the reasonable value of fuel to supply heat for the premises for one year commencing June 1, 1953, was $1,050." The objections were "based on the fact that plaintiff's specifications did not include the difference in value of the premises heated and unheated, as an item of damage."

The judge found for the plaintiff in the respective amounts of $569.79, $175.32, and $482.13, and reported the cases on the admissibility of the above testimony and his denial of certain rulings requested by the defendant. The Appellate Division ordered the reports dismissed and the defendant appealed.

The evidence was sufficient to warrant findings that during the periods covered by the plaintiff's actions the de-

fendant failed to use due diligence in furnishing heat to the leased premises. On such findings the plaintiff would be entitled to recover as damages the difference between the value of the leasehold with the covenant unbroken and its value with the covenant broken. *McCormick* v. *Stowell*, 138 Mass. 431. *A. W. Banister Co.* v. *P. J. W. Moodie Lumber Corp.* 286 Mass. 424, 427, and cases cited. *Bloom, South & Gurney, Inc.* v. *Mitchell*, 289 Mass. 376, 378. That this was the rule of damages recognized by the judge and made the basis of his ultimate findings seems evident from his allowance in each case of the defendant's request numbered 5, reading, "If the court should find for the plaintiff, then the measure of damages applicable in this action is the difference in value of the premises, heated as stipulated in the lease, and the value of said premises as they were in fact heated, and this difference cannot exceed the reasonable cost of supplying heat for said premises as provided in the lease."

The plaintiff, however, did not allege as an item of its damage diminution in value of its leasehold. It is bound by its specifications with which its proof must substantially conform. *Shea* v. *Crompton & Knowles Loom Works*, 305 Mass. 327, 329. *Snow* v. *Metropolitan Transit Authority*, 323 Mass. 21, 23. It was therefore error to admit the evidence to which the defendant objected because not material to any issue presented by the specifications. As for this reason the decision of the Appellate Division must be reversed we do not pause to consider the correctness of the rulings on the defendant's requests.

The decision of the Appellate Division is reversed and the cases are remanded to the trial court for a new trial preliminary to which motions to amend the specifications and perhaps the declarations may, in the discretion of the court, be allowed.

*So ordered.*