John Sands vs. Jesse Arruda & another.

Bristol. May 5, 1971. — June 8, 1971.

Present: Tauro, C.J., Spalding, Cutter, Quirico, & Braucher, JJ.

Landlord and Tenant, Contract for lease, Renewal of lease, Rent, Fur-
   nishing of water. Frauds, Statute of. Equity Jurisdiction, Specific
   performance.

Under a formal written agreement, made between the owners of premises
   who obligated themselves thereby to complete a shop on the premises,
   and a prospective tenant, reciting that "[u]pon completion of said
   shop . . . [the owners] agree to give tenant a five year lease of said
   shop with option to renew said lease for an additional five-year period,
   upon the same terms except for the rent which shall be agreed upon
   by the parties, but in no event to exceed the rent stipulated in the
   original lease," $125 monthly, it was held that from the moment the
   parties signed the agreement they were contractually bound to execute
   a lease upon completion of the shop [594]; and that if the tenant exercised
   his option to renew he would be obligated to pay $125 monthly for
   the renewal period unless the owners agreed to accept a lesser amount.
   [594–595]
Under a written agreement for a lease, made between the owners of
   premises who obligated themselves thereby to complete a beauty shop
   on the premises and the prospective tenant, reciting that the owners
   would "provide water to the extent of reasonable and usual consump-
   tion" and that the tenant would "pay for the use of water over and
   above the reasonable limit to be agreed upon by the parties," it was
   held that as a matter of law the owners should provide without charge
   a quantity of water equal to that which an ordinary tenant other than
   a beauty shop operator would use, and should provide at the tenant's
   expense excess water required by the tenant. [595]
A formal written agreement for a lease signed by the owners of certain
   premises and a prospective tenant of a shop thereon was not unenforce-
   able as a contract by reason of alleged incompleteness of its terms with
   respect to amounts the tenant would pay for rent and for water, and
   the agreement satisfied the statute of frauds, G. L. c. 259, § 1,
   Fourth. [596–597]

Bill in equity filed in the Superior Court on July 7, 1969.
The suit was heard by Taveira, J., on demurrer.
Edward F. Harrington for the plaintiff.
Leonard Alfonso for the defendants.

QUIRICO, J.   This is a suit in equity seeking the specific performance of a written agreement to execute and deliver a lease of real estate.   The case is before us on a report by a justice of the Superior Court for the consideration and determination of this court of his decree sustaining the defendants' demurrer to the bill.   We summarize the allegations of the bill to the extent necessary for this decision.

On July 17, 1967, the plaintiff and the defendants signed an agreement under seal.   The pertinent parts of the agreement are quoted below.[1]   In reliance upon the written agreement the plaintiff spent a substantial amount of money in decorating and paneling the walls of the premises ·to be leased and in furnishing the beauty shop.   All work on the premises was completed in November, 1967, and the plaintiff moved in on November 15 and started to operate a beauty shop there.   No lease had been executed by that date.

The plaintiff on many occasions orally requested : the defendants to provide him with a lease in accordance with the terms of their written agreement of July 17, 1967, and the defendants failed to answer those requests.   On May ·14, 1969, the plaintiff sent a similar request in writing to the defendants by registered mail.   On May 24, 1969, the plaintiff caused a substantially similar written request to be sent by his attorney to the defendants.   This letter further

---

[1] "Lessors agree to exercise reasonable diligence in the completion of the shop approximately 14½ feet by 45 feet for use as a beauty shop, tentatively numbered 240 Rockdale Avenue, New Bedford, and to furnish or provide a toilet with lavatory, overhead lights, electric wiring with receptacles for connection with usual beauty equipment and wall lights.   Lessors further agree to provide water and drain piping and surface the floor with linoleum tile throughout except for area to be covered by tenant with rug or carpet.

"Upon completion of said shop lessors agree to give tenant a five year lease of said shop with option to renew said lease for an additional five-year period, upon the same terms except for the rent which shall be agreed upon by the parties, but in no event to exceed the rent stipulated in the original lease.   Rent in the initial lease shall yield $125.00 monthly in advance. Lessors agree to remove snow from the sidewalk fronting said shop and to provide water to the extent of reasonable and usual consumption.   Tenant agrees to pay for the use of water over and above the reasonable limit to be agreed upon by the parties.   Lessors agree to provide suitable heat by baseboard hot water heat.

"Exercise of the option to renew shall be in writing and to take place not later than 30 days prior to expiration of the original lease."

stated that the plaintiff would proceed with court action if necessary to obtain the lease to which he was entitled under the agreement.

In the early part of June, 1969, the defendants submitted to the plaintiff a proposed lease which did not comply with the written agreement of July 17, 1967, in the following respects: (a) it included clauses and matters not included in the written agreement to give a lease; and (b) it omitted the renewal option and the requirements that the defendants "remove snow from the sidewalk fronting said shop" and that they "provide suitable heat by baseboard hot water heat." On June 13, 1969, the plaintiff's attorney wrote to the defendants stating that the proposed lease did not comply with the written agreement in the above respects and in a provision relating to water rates. He requested that they prepare a new lease in accordance with the agreement and informed them that if they did not do this he would bring a suit in equity for specific performance of the agreement.

On June 25, 1969, the defendants' attorney sent the plaintiff's attorney a letter enclosing a proposed amendment to the lease by adding a provision for an option by the lessee to renew for an additional term of five years and a provision for the removal of snow. The same letter stated that if the proposed lease and amendment were not accepted and signed in the form presented, he would, at the direction of his clients, "take all necessary legal steps to evict" the plaintiff.

Since signing the agreement of July 17, 1967, the plaintiff has been ready, willing and able to carry out all of its terms and is willing and able to pay the required rent. He has carried out all of the terms of the agreement except that he has not signed a written lease for the reason that the defendants have not prepared one in the form required by the agreement. The defendants have refused and still refuse to prepare such a lease.

The plaintiff entered his bill in this case on July 7, 1969. The defendants demurred to the bill alleging the following

reasons: "1. The plaintiff has not stated in his bill such a cause as entitles him to any relief in equity against these defendants. 2. The bill does not set forth facts sufficient to warrant relief to the plaintiff named in the bill of complaint." After hearing, the trial judge sustained the demurrer and reported his action to this court. We shall consider separately the several arguments advanced by the defendants in support of their demurrer.

1. The defendants argue that because the document signed by the parties on July 17, 1967, contemplated that they would execute a new instrument in the future, we should infer that they should not be bound until that future document is signed. The parties agreed in writing on July 17, 1967, to execute a lease in the future, and there is nothing in what they signed which permits an inference that it would have no effect until they signed the ultimate lease. Such an inference would render their preparation and execution of a formal agreement on July 17, 1967, meaningless. From the moment the parties signed that document they were contractually bound to execute a lease in accordance with its terms, with the plaintiff as the lessee and the defendants as the lessors. No contract otherwise binding is to be treated as a nullity solely because it is a contract to execute still another document or instrument in the future. Every agreement for the purchase and sale of real estate contemplates the future execution of a deed and perhaps mortgages and other instruments, but such agreements are not by reason thereof alone unenforceable.

2. The defendants argue that the agreement signed by the parties on July 17, 1967, is not enforceable because it is not a complete contract as to the item of the rent payable during the second five year period if the lease is renewed and as to the item of the amount payable by the lessee for water used on the leased premises. In our view the agreement is enforceable despite the questions raised by the defendants.

The renewal, if any, is at the option of the plaintiff lessee only. If he exercises the option, he has agreed by the

document which he signed on July 17, 1967, that he will pay rent at the rate of $125 a month for the renewal period unless the defendant lessors agree to accept a lesser amount. The defendants knew when they signed the agreement, which included the renewal option, that the maximum rent they could receive during the renewal period was $125 a month, unless they agreed to accept less. They are not required to renew at a lower rent.

The agreement signed by the parties provided that the defendant lessors "agree to . . . provide water to the extent of reasonable and usual consumption," and that the plaintiff lessee "agrees to pay for the use of water over and above the reasonable limit to be agreed upon by the parties." In our view the parties recognized by this language that the use of the leased premises for a beauty shop would result in the use of more water than if they were used for a purpose requiring water only for the usual basic washing and sanitary needs of the occupants of the premises. The interpretation of language of a written document is a matter of law for the court. We interpret this language to mean that the defendants agreed to provide, as included within the $125 monthly rent, a quantity of water equal to that which would be used for an ordinary tenant other than one operating a beauty shop, and that the defendants also agreed to provide any quantity of water which the plaintiff required in excess thereof but that the plaintiff was to pay for such excess.[2] The use of the words, "above the reasonable limit to be agreed upon by the parties," cannot be seized upon by either the plaintiff or the defendants as permitting them stubbornly or unreasonably to refuse to agree on "the reasonable limit" and thereby deprive the other of rights under a lease which will run for at least

---

[2] In preparing the proposed lease which they sent to the plaintiff, the defendants apparently interpreted the agreement in this way. They included a provision that "The Lessee agrees to pay, as additional rent, an amount equal to excess over eighteen ($18) dollars of all water bills rendered for water used in the demised premises." The sum of $18 would seem to be about the amount of the basic annual rate for water which might be used if the premises were occupied for a purpose which did not require the use of water in connection with the products or services sold.

five years at an annual rent of $1,500 and possibly for an additional five years for not more than the same annual rent.

The language of the agreement with reference to the defendants' obligation to furnish water and the plaintiff's obligation to pay for portions of it is no less clear or definite than the language of many leases requiring the lessor to furnish reasonable heat. Such provisions have been upheld and enforced in many cases.[3] For all of the reasons stated above, the written agreement of July 17, 1967, did not involve the areas or degrees of incompleteness, indefiniteness or vagueness involved in *Rosenfield* v. *United States Trust Co.* 290 Mass. 210, relied on by the defendant, and in *Saxon Theatre Corp. of Boston* v. *Sage,* 347 Mass. 662, and *Riedel* v. *Plymouth Redevelopment Authy.* 354 Mass. 664.

3. The defendants advanced a further argument against the sufficiency of the bill, and it is that the agreement of July 17, 1967, is not sufficient to satisfy the statute of frauds relating to interests in land. G. L. c. 259, § 1, Fourth. The sole basis for this argument is that "there are terms remaining to be determined, namely rent for the second five-year term and the amount of water to be paid for by the plaintiff," and, therefore, "there is no completed contract." This is the same argument which we have already disposed of above as to both items. The writing contains the full agreement of the parties, and we have held that it sufficiently states an enforceable agreement. The writing involved in this case is a formal agreement, and not a mere memorandum of an oral agreement, and it is

---

[3] In *Jones* v. *Parker,* 163 Mass. 564, 566, the lessor covenanted "during the term of this lease, reasonably to heat and light the demised premises." In *R. H. Macy & Co. Inc.* v. *Fall River,* 323 Mass. 624, 625, the lessor covenanted "'to furnish sufficient heat to reasonably heat the said premises in accordance with the proper or customary use of such building . . . .'" In *A & S Prod. Corp.* v. *Parker,* 334 Mass. 189, 190, the lessor covenanted "'. . . to use due diligence in furnishing heat for the premises hereby demised during the usual business hours during the heating season . . . .'" In *Charles E. Burt, Inc.* v. *Seven Grand Corp.* 340 Mass. 124, 126n, the lessor covenanted to "furnish heat at all reasonable hours during the heating season." See *New York Cent. R.R.* v. *Stoneman,* 233 Mass. 258, 260, S. C 236 Mass. 81.

signed by the parties to be charged. It satisfies the requirements of the statute. *Pearlstein* v. *Novitch*, 239 Mass. 228, .230–231. *Cousbelis* v. *Alexander*, 315 Mass. 729. *Hook Brown Co.* v. *Farnsworth Press, Inc.* 348 Mass. 306, 310. *A. B. C. Auto Parts, Inc.* v. *Moran, ante*, 327, 329, and cases cited. We do not reach the question whether the fact that the plaintiff took possession of the premises in November, 1967, made improvements thereon, and has continued in possession to this date takes the case out of the statute of frauds.

The decree sustaining the demurrer is reversed. A new decree is to be entered overruling the demurrer.

*So ordered.*