BRIDGE ENTERPRISES, INC. *vs.* FUTURITY THREAD COMPANY.

Middlesex.     March 21, 1974. — May 9, 1974.

Present: ROSE, GOODMAN, & GRANT, JJ.

*Contract,* What constitutes, Construction, Specific performance. *Landlord and Tenant,* Contract for lease. *Frauds, Statute of. Evidence,* Extrinsic affecting writing. *Agency,* Scope of authority, Delegation of authority. *Equity Pleading and Practice,* Bill; Master: findings. *Words,* "Negotiate."

A memorandum providing for a lease of "first floor of . . . [a certain building] which is approximately" a specified number of square feet, could properly be interpreted by relevant evidence respecting the first floor of the building and, so interpreted, identified certain space on the first floor sufficiently to satisfy the statute of frauds, G. L. c. 259, § 1.   [246-247]

A finding of a master that an employee of a corporation has authority to "negotiate" a lease to be given by it meant that he had authority to bind it to a lease. [247]

Where it appeared that the president of a corporation had authority to act for it in negotiating a lease by it, he could delegate such authority to another person. [247-248]

A conclusion was proper that the parties to a memorandum providing for a lease of business property intended to be bound by the memorandum as a complete contract although a formal lease was contemplated. [248]

In a suit in equity for specific performance of a contract for a lease of space in a building, there was no merit in a contention by the defendant that the area of the space was not put in issue by the pleadings and that therefore the master was in error in finding it where the contract only called for "approximately" a specified number of square feet on the first floor of the building and the bill prayed that the court "determine and establish the lease agreement." [248-249]

BILL IN EQUITY filed in the Superior Court on May 16, 1972.

The suit was heard by *Chmielinski, J.*, on a master's report.

*Robert A. Keating* for the defendant.

*John A. Gledhill, Jr. (Charles P. Mamakos* with him) for the plaintiff.

ROSE, J.  This is a bill for specific performance of a written agreement to give the plaintiff a lease of certain premises in Watertown.  The defendant appeals from the entry of an interlocutory decree which impliedly overruled his exceptions to the master's report and expressly confirmed the report, and from the entry of a final decree which ordered the defendant to execute and deliver a written lease, enjoined it from taking certain actions inconsistent with the lease, and determined the amount of rent owed by the plaintiff.

The case was referred to a master.  We summarize the facts found by him.  The defendant owns a building located at 5 Bridge Street in Watertown.  As of February 1, 1972, and for some prior period, the plaintiff occupied the third floor and a portion of the second floor of the

defendant's building as a tenant at will.  In January of 1972 Benjamin G. Rae, III, the defendant's sales manager, met with George D. Coupounas, the plaintiff's treasurer, to discuss the possible lease of a portion of the building's first floor.  Coupounas and Rae did not reach agreement at their first meeting, but on February 1, 1972, they drafted and, in their respective official capacities, signed a memorandum providing, as the master found, for a lease of a portion of the first floor of the building.  According to the memorandum, the lease was to commence on the date thereof and run for five years with an option to renew for another five-year period.  The memorandum provided that the defendant would prepare a formal lease document which would be subject to the approval of the plaintiff's attorney.

The defendant drafted a lease, which was signed by Rae, and tendered it to the plaintiff.  The draft was rejected by the plaintiff on the ground that it did not conform to the terms of the memorandum (the master found that the draft failed to include an option to renew).  Although the plaintiff pointed out the discrepancies between the draft and the memorandum, the defendant refused to prepare another draft.  In February of 1972 the plaintiff took possession of a portion of the first floor of the building.  It has continued to occupy those premises.

From the pleadings we find that on April 5, 1972, the defendant sent the plaintiff a letter purporting to revoke its offer to lease; soon afterwards it brought an action of ejectment against the plaintiff in a District Court.  On May 16 the plaintiff entered the present bill.  The master found, inter alia, that the plaintiff was in lawful possession of the premises which it then occupied and that the defendant was not entitled to possession thereof.

The master prepared limited summaries of evidence in response to the defendant's objections but did not report the evidence in full.  In the absence of a full report of the evidence the subsidiary findings of the master must

stand unless they are "mutually inconsistent, contradictory or plainly wrong." *Boxborough* v. *Joatham Spring Realty Trust,* 356 Mass. 487, 489 n. 1 (1969), and cases cited. See also *Madigan* v. *McCann,* 346 Mass. 62, 64 (1963). To the extent that the master's ultimate findings, which are based upon his subsidiary findings, amount to conclusions of law, they are subject to review by this court on appeal. *Ryan* v. *Stavros,* 348 Mass. 251, 253 (1964). *Lucey* v. *Hero Intl. Corp.* 361 Mass. 569, 571 (1972).

The defendant advances the following as grounds for reversing the final decree: (1) the memorandum signed by Coupounas and Rae did not satisfy G. L. c. 259, § 1 (the statute of frauds), (2) Rae had no authority to bind the defendant, (3) the parties never agreed on the terms of the lease and (4) one of the master's findings concerned an issue not raised by the pleadings.

1. The defendant's objection under c. 259 is grounded upon the theory that the memorandum, which provided for a "[l]ease of first floor of building we're presently in, which is approximately 10,653 sq. ft., inside dimensions, according to landlord's measurements," did not adequately identify the space to be leased. The master's ultimate finding, that the memorandum referred to only a portion of the first floor premises in the Bridge Street building, is supported by subsidiary findings that the plaintiff was a tenant of a portion of that building at the time the memorandum was signed and that the total area of the building's first floor was some 43,500 square feet, approximately four times the amount of space specified in the memorandum. His finding that the memorandum referred to the particular area occupied by the plaintiff is supported by evidence that the space in question had been vacant at the time the memorandum was signed, was separated from the rest of the first floor by a fire wall, and had been inspected by Rae while in the company of Coupounas. That this evidence was competent to furnish a means of interpreting and apply-

ing the written memorandum is settled by the decision in *Mead* v. *Parker,* 115 Mass. 413, 415 (1874). See also *Cohen* v.. *Garelick,* 344 Mass. 654, 657 (1962); *Tzitzon Realty Co. Inc.* v. *Mustonen,* 352 Mass. 648, 652-653 (1967). There is no suggestion that the defendant had available any other space which conformed to the description in the memorandum. Cf. *Michelson* v. *Sherman,* 310 Mass. 774, 777 (1942).

2. The master also found that the defendant's sales manager, Rae, had actual authority to negotiate the lease in question. The defendant's president had represented to Coupounas that Rae had such authority and Rae had participated in several negotiating sessions with the plaintiff.

The defendant first argues that the finding that Rae had the authority to "negotiate" for the defendant does not constitute a finding that he possessed the power to *bind* it to a lease. We reject this interpretation, as there is nothing to indicate that the master intended to make such a distinction or that common usage would support it. See Webster's Third New Intl. Dictionary, p. 1514, which defines "negotiate" as "to arrange for or bring about through conference and discussion . . .."

The defendant also contends that neither Rae nor the defendant's president could negotiate in its behalf without the express approval of the defendant's board of directors, citing *Lucey* v. *Hero Intl. Corp.* 361 Mass. 569, 572-573 (1972). We regard the defendant's argument on this point as concluded by the following language contained in its answer to the bill of complaint: "The defendant says that Benjamin G. Rae III had no authority to execute any document binding the defendant corporation . . . and that all matters relating to any proposed lease would require the sanction and approval of the president of the corporation." We interpret this statement as an admission that the defendant's president possessed the authority to negotiate the lease in question. It follows that the president had the power to appoint Rae

as an agent to exercise his powers in the matter. Restatement 2d: Agency, § 79. See also *Gerrish Dredging Co.* v. *Bethlehem Shipbuilding Corp. Ltd.* 247 Mass. 162, 167 (1923).

3. The defendant further objects to the master's implied finding that the parties reached agreement on the terms of the lease. It is the defendant's contention that at the time the memorandum was signed the parties were still in disagreement concerning the boundaries and the total floor area of the space to be leased. The defendant also notes that the memorandum made no provision for water charges, repairs, maintenance, and certain other aspects normally found in a lease of manufacturing space.

The contention that the parties had not determined what space was to be leased at the time they signed the memorandum is settled by our discussion in part 1 of this opinion and requires no further comment. The floor area of the leased space was stated in the memorandum to be "approximately 10,653 sq. ft., inside dimensions, according to landlord's measurements." We cannot infer from the use of the word "approximately" or from the fact that the actual area as determined by the master was somewhat less than the stated figure that the parties were in disagreement on this point. To the contrary, the use of the word "approximately" indicates that the stated figure was intended merely as an estimate. The boundaries of the leased space having been fixed, it was not fatal to the validity of the agreement that its floor area was not calculated in advance.

Nor did the omission of other terms serve to render the memorandum ineffectual. As all material terms had been specified in the memorandum, the master could reasonably have concluded that the lease to be drafted and delivered by the defendant was intended as a "mere memorial" of a contract which had already been finalized by the assent of the parties to its terms. See *Rosenfield* v. *United States Trust Co.* 290 Mass. 210, 216 (1935).

See also *Greany* v. *McCormick,* 273 Mass. 250, 252-253 (1930); *Sands* v. *Arruda,* 359 Mass. 591, 594-596 (1971). We note in passing that the plaintiff's rejection of the lease as tendered by the defendant was not grounded upon any matter omitted from the memorandum, but rather on the defendant's failure to include the five-year option clause which had been provided for in the memorandum.

4. The defendant argues, finally, that the master erred in making a finding as to the floor area of the leased space because that issue had not been raised by the pleadings. See *Drury* v. *Hartigan,* 312 Mass. 175, 177 (1942); *McOuatt* v. *McOuatt,* 320 Mass. 410, 415 (1946). In view of the fact that the memorandum did not attempt to state the floor area with precision, we believe that prayer 5 of the plaintiff's bill, which asked the court to "determine and establish the lease agreement made between the plaintiff and the defendant," was adequate to raise the issue and authorized the master to make a finding on that point.

We find no error and conclude that the interlocutory and final decrees were properly entered.[1]

*Decrees affirmed.*

---

[1] During the pendency of this appeal the defendant filed a motion in this court to modify the final decree, asserting that the case has become moot because the plaintiff has discontinued the active operation of its business and has failed to pay rent under the lease agreement. The lease, however, constitutes an asset of the plaintiff corporation, and the issues relating to its validity are not moot even if the defendant's assertions are true. If the plaintiff has in fact failed to comply with its obligations under the lease established by the final decree, there is nothing in that lease or in the decree which prevents the defendant from pursuing all proper avenues to enforce its rights. The defendant's motion is denied.