**GEL SYSTEMS INC.,**
**Plaintiff, Appellant,**

v.

**HYUNDAI ENGINEERING &**
**CONSTRUCTION CO., INC.,**
**Defendant, Appellee.**

No. 89–1579.

United States Court of Appeals,
First Circuit.

Heard Oct. 6, 1989.

Decided May 8, 1990.

---

**18.** *See* Bloom at 670–71, 675, 690 n. 170; Temple Comment at 715.

**19.** Temple Comment at 717.

Denzil D. McKenzie with whom McKenzie & Company, P.C., Cambridge, Mass., was on brief for appellant.

David J. Paliotti with whom Stephen A. Greenbaumm and Greenbaum, Oshana, Nagel, Fisher & Hamelburg, Boston, Mass., were on brief for appellee.

Before CAMPBELL, Chief Judge, TIMBERS,* Senior Circuit Judge, and BREYER, Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Gel Systems, Incorporated ("Gel") sued Hyundai Engineering & Construction Company ("Hyundai") for breach of contract in the United States District Court for the District of Massachusetts. After a bench trial, the district court held that the parties never entered into a binding contract. Judgment was entered for Hyundai. Gel argues on appeal that a letter of intent executed by the parties at Gel's request after several months of negotiations required the court to hold that there was a binding contract. We affirm.

### Facts

In September 1984, Hyundai, through its agent, D.S. Sim, solicited a quotation from Gel for ten language laboratories to fulfill its commitments on a contract with its client in Saudi Arabia. On September 12, 1984, Gel's Vice President, Anthony Longo, submitted a proposal with alternative specifications and prices. After a few days of negotiations with Hyundai, Gel sent a revised proposal guaranteeing a stated price until December 31, 1984.

In November 1984, as negotiations between Sim and Longo continued, Hyundai sought an extension on the December 31

* Of the Second Circuit, sitting by designation.

deadline and Gel sought a firm commitment from Hyundai. On November 29, 1984, Gel telexed Hyundai offering to guarantee the price until January 15, 1985 if Hyundai would: 1) issue a letter of intent on or before December 31, 1984, stating an intent to purchase specified language laboratories from Gel and 2) place a confirming purchase order with Gel on or before January 15, 1985. On December 18, 1984, Gel sent Hyundai a letter containing a detailed proposal, including such terms as price, delivery, installment, and payment. The letter indicated that the total price of the equipment installed would be $933,-926.00. The letter stated, "We suggest that your forthcoming letter of intent incorporate this letter by reference as the basis for the contract. Minor adjustments can be made, if necessary, when the final contract/purchase order is prepared in January." Negotiations continued through December and no letter of intent arrived.

On January 3, 1985, Gel telexed Hyundai and threatened to withdraw its offer unless Hyundai sent Gel a letter of intent "dated" on or before December 31, 1984, containing Hyundai's "statement to have a form of contract prepared for Gel's agent to sign no later than January 15, 1985." On January 7, 1985, Gel received a letter of intent from Hyundai, dated December 27, 1984. The letter of intent made reference to Gel's proposal of December 18, and stated Hyundai's "intention of purchasing GEL's equipment subject to our job site client's approval on your system proposed." The letter further stated,

> formal contract will be made between Hyundai Saudi and Yarthrip [Gel's Saudi agent] as per your proposal [of December 18] except followings: 1. In any events, CIF job site total price installed/commisioned shall not exceed USD933,926.00. 2. Ocean freight from U.S. port to Riyard (at job site), insurence premium from factory to Riyard (at job site) and forwarding agent fee at U.S.A. and Saudi shall be settled at cost between Hyundai–Saudi and Yarthrip

but shall not exceed USD44,376.00. 3. Terms and conditions in detail will be further discussed when formal contract is made. [all sic].

The letter was signed by a Director of Hyundai, O.S. Suh, and lines were provided for a signature from Gel. Upon receiving the letter, Gel's Vice President, Anthony Longo, signed it.

No further documents were executed and Hyundai never issued a purchase order. Sometime thereafter Hyundai informed Gel that it had decided to purchase its equipment from another company.

On June 3, 1986, Gel sued Hyundai in the United States District Court for the District of Massachusetts. At the trial, Gel argued that the letter of intent gave rise to a binding contract based on the terms of its December 18 proposal. Hyundai argued that the letter of intent did not create a binding contract and that the parties' intent was not to be bound in the absence of approval by Hyundai's job site client and the signing of a formal contract. The evidence consisted of communications between the parties (including the proposal and the letter of intent) and the testimony of Anthony Longo, Gel's Vice President, and I.K. Kim, a Purchasing Manager of Hyundai.

The district court found that the communications between the parties did not give rise to a binding contract. On May 4, 1989, the district court ordered judgment for Hyundai on the basis of its previous memorandum opinion of December 29, 1988.[1] This appeal followed.

## Discussion

Hyundai contends that the district court's conclusion that the parties did not enter into a binding contract amounts to a finding of fact that the parties did not intend to be bound by the letter of intent. Hyundai insists that under Federal Rule 52(a), the district court's determination can be reversed only if clearly erroneous.[2]

---

1. The district court ordered judgment for Gel on Hyundai's counterclaim. No appeal was taken.

2. Rule 52(a) states, in part, "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erro-

Gel responds that the district court's conclusion that the letter of intent did not give rise to a binding contract is a conclusion of law subject to de novo review. Gel relies on *United Truck & Bus Service Co. v. Piggott*, 543 F.2d 949 (1st Cir.1976), in which this court stated, "If the district court had only construed the written contract itself, its conclusions would be freely reviewable. But in the present case the court clearly relied in part on 'extrinsic evidence of the parties' intent' and therefore the clearly erroneous standard of Fed. R.Civ.P. 52(a) applies." *Id.* at 950 (citations omitted).

■ The above quotation from *Piggott* requires some expansion, however. First, of course, a finding that is "predicated on or induced by, a misapprehension of law" may always be reviewed. *See RCI Northeast Services Division v. Boston Edison Co.*, 822 F.2d 199, 203 (1st Cir.1987); *see also United States v. Singer Manufacturing Co.*, 374 U.S. 174, 194 n. 9, 83 S.Ct. 1773, 1784 n. 9, 10 L.Ed.2d 823 (1963). Second, even where based solely on written documents, a finding as to the meaning of a writing will be reviewed under the clearly erroneous standard if, applying the relevant legal principles, the writing is subject to more than one reasonable interpretation. *See RCI Northeast Services Division*, 822 F.2d at 202 ("findings of fact do not forfeit 'clearly erroneous' deference merely because they stem from a paper record", and "where the plain meaning of a contract phrase does not spring unambiguously from the page or from the context, its proper direction becomes one for the factfinder, who must ferret out the intent of the parties"). *See also Boston Five Cents Savings Bank v. Secretary of the Department of HUD*, 768 F.2d 5, 8 (1st Cir.1985) (if reasonable persons can differ about what a contract provision means, a question of fact is usually present).

■ The writings at issue in this case are not so unambiguous as to render their interpretation a pure question of law subject to plenary review. They were, moreover, supplemented by some extrinsic evidence: the court attributed its conclusion that the parties had not entered into a binding agreement to its consideration of "the parties' course of dealings" as well as to the documentary evidence. Absent legal error, therefore, we will set aside the district court's findings on the parties' intent only if clearly erroneous.

■ The sole issue on this appeal is whether the district court erred in concluding that the letter of intent issued by Hyundai did not give rise to a binding contract. Under Massachusetts law, the fact that a writing refers to a formal document to be executed in the future does not automatically prevent the initial writing from being binding. *See, e.g., Sands v. Arruda*, 359 Mass. 591, 270 N.E.2d 826, 829 (1971) ("No contract otherwise binding is to be treated as a nullity solely because it is a contract to execute still another document or instrument in the future."); *Nigro v. Conti*, 319 Mass. 480, 66 N.E.2d 353, 354 (1946) ("The inclusion of a provision for the later drawing up of a formal memorial of the terms of an agreement, written or oral, is not necessarily inconsistent with an intent to be presently bound to the agreement in its original informal state."). Nonetheless, the fact that a writing specifically contemplates the future execution of a formal contract gives rise to a "strong inference" that the parties do not intend to be bound until the formal document is hammered out.

> Normally the fact that parties contemplate the execution of a final written agreement effects a strong inference that the parties do not intend to be bound by earlier negotiations or agreements until the final terms are settled. If all material terms which are to be incorporated into a future writing have been agreed upon, it may be inferred that the writing to be drafted and delivered is a mere memorial of the contract already

---

neous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Fed.R.Civ.P. 52(a).

final by the earlier mutual assent of the parties to those terms.

*Rosenfield v. United States Trust Co.*, 290 Mass. 210, 195 N.E. 323, 325 (1935). *See also Goren v. Royal Investments Inc.*, 25 Mass.App.Ct. 137, 516 N.E.2d 173 (1987).

██ The district court found here that, in effect, the parties had never reached agreement on all the material terms of a contract. It gave several reasons for this: the fact the letter of intent expressed no more than defendant's *intention* to purchase; the letter's reference to a formal contract to be made in the future, with "terms and conditions in detail" to be "further discussed"; the court's perception that room existed for further negotiation and disagreement; the need for job-site client approval; the fact this was a complicated international transaction. In deciding whether or not the parties had reached agreement, the district court had the benefit—besides the documents—of testimony from two major participants in the negotiations. While a close question, the court's finding of no binding agreement was not clearly erroneous.

To be sure, Gel's proposal of December 18 provided a fairly comprehensive statement of terms and conditions, and the letter of intent stated that the "formal contract will be made ... as per [that] proposal." This latter assertion, however, was expressly made subject to three exceptions, of which one was that, "[t]erms and conditions in detail will be further discussed when [the] contract is made." It cannot be said, therefore, that Hyundai's letter of intent manifested Hyundai's unqualified assent to all of Gel's December 18 terms. Rather, Hyundai could be found to have reserved the right to renegotiate those terms prior to entering into a formal contract. Hyundai's intention to purchase Gel's equipment was also made subject to the approval of Gel's system by the Saudi client, and there was apparently some disagreement as to what role this client was to play. While Gel's witness, Mr. Longo, testified that approval would be a routine matter, Hyundai's witness, Mr. Kim, indicated that the job site client could vary the

terms and that Hyundai would be required to follow its client's instructions. Mr. Kim further testified that when Hyundai issues a letter of intent there are generally "many things open to be decided later" and that the terms are still subject to negotiation. On this record, the district court was entitled to conclude that the parties had not reached agreement on the material terms of the transaction and, therefore, never entered into a binding contract.

Appellee's request for attorney's fees is denied.

*The judgment of the district court is affirmed. Ordinary costs to appellee.*