David FICKES, Plaintiff,

v.

SUN EXPERT, INC., Sterling Crum, Clint Morse, Douglas Pryor, and Apex Computer, Defendants.

Civ. A. No. 90–13040–S.

United States District Court, D. Massachusetts.

March 8, 1991.

Norman H. Jackman, Comras & Jackman, Boston, Mass., for plaintiff.

Jennifer S.D. Roberts, Mary B. Freeley, Rackemann, Sawyer & Brewster, Boston, Mass., for defendants.

MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS COUNTS I, II, AND IV, AND DEFENDANTS PRYOR AND APEX, AND FOR A MORE DEFINITE STATEMENT OF THE CLAIMS IN COUNTS V AND VI

SKINNER, District Judge.

This case arose from the creation and development of a computer magazine, SunExpert. The plaintiff David Fickes was the originator of the venture, defendant Sun Expert, Inc., and its CEO. Defendants Sterling Crum and Clint Morse were cash investors, officers and directors in the venture. Defendant Douglas Pryor was editor-in-chief of SunExpert magazine. Apex Computers is one of the magazine's advertisers, alleged to be controlled by Mr. Crum, and alleged to be the true owner of most of the shares held by Mr. Crum. Plaintiff filed a verified complaint but was denied an *ex parte* temporary restraining order, except that a temporary order restraining the sale of SunExpert magazine by the corporate defendant was ordered. Upon reconsideration of the record to date, I have denied all preliminary injunctions. The defendants have moved to dismiss Counts I (Breach of Investment Agreement), III (Breach of Contractual and Fiduciary Duty), and IV (M.G.L. c. 93A) and have moved for a more definite statement of Counts V (Defamation) and VI (Interference with Advantageous Business Relations). Defendants Pryor and Apex Computer have moved to dismiss the entire complaint.

"A Rule 12(b)(6) motion will be granted only if ... the pleading shows no set of facts which could entitle plaintiff to relief." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988) (citing *Conley v. Gibson*, 355 U.S. 41, 45–48, 78 S.Ct. 99, 101–103, 2 L.Ed.2d 80 (1957)). The complaint alleges

that Mr. Fickes originated the idea of producing a magazine targeted at the owners of Sun Microcomputers. He entered into an agreement with Sun Microcomputers to use their ownership list for circulation of the magazine. Mr. Fickes sought investors for the venture. Mr. Morse sent Mr. Fickes a "letter of intent" about the structure of the venture in May 1989. Mr. Fickes signed the letter in agreement. In relevant part, the letter stated that Mr. Fickes would receive 10% of the stock upon the return of capital to the investors, 5% of the stock for the use of the Sun Microsystems mailing list, and 5% of the stock on a straight line basis over a 24 month period beginning in June 1989. Mr. Fickes also would have the option to purchase 9% of the stock from investors at a calculated price from June 1, 1991 to May 31, 1993. Mr. Fickes would have the highest priority of right of first refusal for any stocks sold. Mr. Fickes would serve as an officer of Sun Expert under an employment agreement precluding termination without cause. Mr. Crum would serve as Chairman of the Board of Directors and Mr. Morse would be Treasurer and Secretary. The letter concluded:

> It is understood that this is simply a letter of intent and while we have agreed in principal [sic] as stated above and agree to proceed in good faith to work out the details of formation of SunExpert, neither of us shall have any obligation to the other as a result of this letter as the creation of our venture is subject to the execution of formal agreements.

On October 19, 1989, Mr. Fickes entered into an employment agreement and a stock option contract. He was required to sign it on short notice and was not permitted to have it reviewed by his attorney. Mr. Fickes secured substantially all of the advertising for the first three issues that were released. On February 3, 1990, Mr. Morse informed Mr. Fickes in writing that his employment was terminated with cause. No cause was specified.

■ In Count I, Mr. Fickes alleges a breach of the "letter of intent" that both Mr. Fickes and Mr. Morse signed. More particularly he alleges that defendants' failure to enter into written agreements to implement the letter of intent constitutes a breach of implied covenant of good faith and fair dealing. The defendants assert that a letter outlining points of a possible venture which expressly rejects any legal obligation by the parties is not an enforceable contract. "Normally the fact that parties contemplate the execution of a final written agreement justifies a strong inference that the parties do not intend to be bound by earlier negotiation or agreements until the final terms are settled." *Rosenfield v. United States Trust Co.*, 290 Mass. 210, 216, 195 N.E. 323 (1935).

Recently, our court of appeals addressed the issue of when a letter of intent that contemplates the execution of formal documents becomes a binding contract. *Gel Systems, Inc. v. Hyundai Engineering and Construction Co.*, 902 F.2d 1024 (1st Cir.1990). While affirming the district court's finding of no binding contract in the case, the court of appeals recognized Massachusetts' acceptance of letters of intent as potential contracts, citing *Sands v. Arruda*, 359 Mass. 591, 270 N.E.2d 826 (1971) and *Nigro v. Conti*, 319 Mass. 480, 66 N.E.2d 353 (1946). Additionally, the Court of Appeals for the Second Circuit has endorsed the framework for dealing with preliminary agreements articulated by Judge Leval in *Teachers Insurance and Annuity Association v. Tribune Co.*, 670 F.Supp. 491 (S.D.N.Y.1987). *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 71 (2nd Cir.1989). In *Teachers Insurance,* Judge Leval distinguished the two kinds of preliminary agreements. The first kind occurs when the parties have reached complete agreement on all the issues perceived to require negotiations, but have expressed the desire for a more elaborate formalization. Under New York and Massachusetts law, the preliminary agreement can take effect prior to the formalization. According to Judge Leval:

> "The second and different sort of preliminary binding agreement is one that expresses mutual commitment to a contract on agreed mutual terms that remain to

be negotiated.... [T]he parties can bind themselves to a concededly incomplete agreement in the sense that they accept a mutual commitment to negotiate together in good faith in an effort to reach final agreement within the scope that has been settled in the preliminary agreement."

*Teachers Insurance*, 670 F.Supp. at 498. This second binding preliminary agreement does not guarantee that the parties will conclude a contract if they negotiate in good faith. The preliminary agreement precludes, however, renouncing the deal, abandoning the negotiations, or insisting on conditions that do not conform to it. *Id.* *See also* 1 E.A. Farnsworth, *Farnsworth on Contracts* 186–188 (1990). While plaintiff has not cited any Massachusetts case recognizing these binding preliminary agreements to negotiate in good faith, I find that enforcing such agreements is commensurate with Massachusetts' recognition of binding preliminary agreements. This contractual duty is particularly appropriate in this case, where the parties have expressed, in the letter of intent, objective intentions to negotiate along the parameters of the letter of intent, but not commit themselves to their ultimate contractual objectives. Mr. Fickes has pleaded facts that if proven provide a basis for concluding that the defendants did not continue to negotiate in good faith.

■ In Count III, the plaintiff alleges that the individual defendants as majority shareholders in a close corporation and joint venturers breached their fiduciary duties to him as a minority shareholder and fellow joint venturer. A claim for a "freeze-out" requires that the plaintiff be a minority shareholder in the close corporation. *See Wilkes v. Springside Nursing Home, Inc.*, 370 Mass. 842, 353 N.E.2d 657 (1976). Mr. Fickes alleges that he would be a shareholder, but for the fact that the defendants did not permit him to exercise his stock option and did not grant him his shares as agreed in the letter of intent. The former, if proven, and the latter, if the plaintiff prevails on Count I, would provide a basis for recognizing the requisite ownership interest. In any case, joint venturers

may have a fiduciary relationship if they "stand in such a relation that, while it continues, confidence is necessarily reposed by one...." *Warsofsky v. Sherman*, 326 Mass. 290, 293, 93 N.E.2d 612 (1950) (quoting Lord Chelmsford in *Tate v. Williamson*, L.R. 2 Ch. 55, 61). *See generally Payton v. Abbott Labs*, 512 F.Supp. 1031, 1035–1036 (D.Mass.1981).

■ In Count IV, the plaintiff states a claim under chapter 93A. The defendants assert that Mr. Fickes has failed to state a claim, because he has not complied with the procedural requirements of § 9 and because the defendants are not engaged in trade or commerce. The claim, however, is brought under § 11 when the parties act "in a business context." *International Fidelity Insurance Co. v. Wilson*, 387 Mass. 841, 443 N.E.2d 1308, 1315 (1983) (quoting *Lantner v. Carson*, 374 Mass. 606, 611, 373 N.E.2d 973 (1978)). Section 11 does not require a demand letter.

■ Section 11 requires that the parties be engaged in the conduct of trade or commerce. The Supreme Judicial Court has interpreted the requirement to preclude liability under the statute within the context of an employment relationship. *Manning v. Zuckerman*, 388 Mass. 8, 444 N.E.2d 1262, 1265 (1983) ("although a magazine publishing company engages in trade or commerce, the hiring and firing of employees is not part of the company's commercial activities with regard to consumers, competitors, or other business persons"). While Mr. Fickes alleges more than simply the breach of an employment relationship, the S.J.C. has further decided that a dispute about the allocations of assets between the two sole shareholders of a corporation was not covered by § 11. *Zimmerman v. Bogoff*, 402 Mass. 650, 524 N.E.2d 849, 856 (1988). Section 11 actions may be brought for a violation of a fiduciary duty where it involves an arms-length transaction between wholly-independent parties. *Nader v. Citron*, 372 Mass. 96, 360 N.E.2d 870 (1977) (a booking agency misappropriating the speaking fees collected on behalf of the consumer advocate). "Section

11 is not available as a remedy for a private grievance between one member of a legally recognized entity or relationship and another who acts as his agent." *Newton v. Moffie,* 13 Mass.App.Ct. 462, 434 N.E.2d 656, 660 (1982) (dispute between partners). The limitation of § 11 claims is the result of the legislative intent to provide private rights of action for public wrongs. Intra-entity disputes are generally of limited public concern. The fact that some of the alleged deceptive acts occurred in the formation of the entity does not change the private nature of Mr. Fickes' claim.

■ The defendants Apex Computer and Mr. Pryor have moved separately to dismiss all claims against them. The only allegation against Apex in the complaint is in Count III:

> 48. Discriminatory preferential treatment is given by Sun Expert to Apex Computer, as an advertiser, as a lessor of equipment, and as a supplier of computers, because of Morse and Crum's connection with Apex Computer.

The plaintiff does not allege in what manner Apex violated a duty to him. The plaintiff has responded in the memorandum in opposition that Apex is or should be deemed a shareholder of Sun Expert and that it was involved in the waste of the corporation. These assertions may state a claim under Count III, but their absence from the complaint prevents Apex from responding to "a short and plain statement of the claim," required by Fed.R.Civ.P. 8.

■ The only reference to defendant Pryor in the complaint is in the caption and the identification of the parties. The plaintiff has asserted in the memorandum in opposition that Mr. Pryor was the publisher of the defamatory statement alleged in Counts V and VI. All defendants have moved for a more definite statement of Counts V (defamation) and VI (interference with business relations). Count V does not assert which defendants made defamatory statements to the plaintiff's current employer and others on various subjects. Count VI alleges tortious interference with business relations based on those statements. The failure to plead the publishers of defamatory statements is sufficient grounds for allowing the generally discouraged motion for a more definite statement. *Runyan v. United Brotherhood of Carpenters,* 566 F.Supp. 600, 608 (D.Colo. 1983).

Accordingly, the motion to dismiss by defendants Apex Computer and Douglas Pryor is allowed without prejudice and with leave to amend the complaint within fourteen days. Defendants' motion to dismiss is allowed as to Count IV and denied as to Counts I and III. Defendants' motion for a more definite statement as to Counts V and VI is allowed.